Estella M. GEARHART, Plaintiff,

v.

SEARS, ROEBUCK & CO., INC. and Robert Schroeder, Defendants.

No. Civ.A. 97–2456–GTV.

United States District Court, D. Kansas.

Oct. 19, 1998.

Robert B. Van Cleave, Overland Park, KS, for Estella M. Gearhart, plaintiff.

Lisa White Hardwick, Shook, Hardy & Bacon L.L.P., Kansas City, MO, Melissa A. Taylor, Shook, Hardy & Bacon L.L.P., Overland Park, KS, for Sears, Roebuck & Co., Inc., defendant.

### MEMORANDUM AND ORDER

VANBEBBER, Chief Judge.

Plaintiff Estella M. Gearhart brings this action against defendants Sears, Roebuck & Company (Sears) and Robert Schroeder, who was Sears' Contract Sales Regional Manager and Gearhart's immediate supervisor, alleging that they discriminated against her on the basis of age, disability, and gender, harassed her on the basis of disability and gender, denied her request for medical leave, and retaliated against her for requesting medical leave, all in violation of various federal statutes. Gearhart also asserts many of the same claims under Kansas statutes and common law, as well as state law claims of defamation and negligent infliction of emotional distress. The case is before the court on defendants' motion (Doc. 72) for summary judgment. For the reasons set forth below, defendants' motion is granted.

### I. FACTUAL BACKGROUND

The following facts are either uncontroverted or are based on evidence submitted with summary judgment papers viewed in a light most favorable to the nonmoving party.[1] Immaterial facts and facts not properly supported by the record are omitted.

#### A. Facts Relevant to All Claims

Prior to November 1, 1996, Sears employed Gearhart in its Contract Sales Regional Office. From 1992 to 1996, Gearhart was entirely responsible for purchasing supplies and equipment from OfficeMax, an office supply company, for the Regional Office. Gearhart either directly made or authorized all of Sears' OfficeMax credit card charges in 1996. From January to September 1996, Gearhart used the company's OfficeMax credit card to purchase over $11,000.00 in equipment and supplies.

In mid-October 1996, Mary Zellers, Senior Administrative Assistant to Schroeder, furnished Schroeder with copies of the January to September 1996 OfficeMax invoices. Schroeder next discussed the issue with Jerry Coghlan, Sears' Contract Sales National Sales Manager. Schroeder testified in his deposition that, in their conversation, Schroe-

---

1. The court takes a dim view of plaintiff's counsel's practice of stating that facts are controverted when the supporting fact that he cites is entirely consistent with the allegedly controverted fact. Local Rule 56.1 requires plaintiff's counsel to set forth a separate statement of facts, not just to set forth additional facts under the guise of controversion.

der told Coghlan that Gearhart's purchases were "out of line."

On Friday, October 25, 1996, Schroeder reviewed the invoices with Gearhart and questioned her regarding several invoice items that were approved for purchase by Gearhart but could not be found in the Regional Office. Gearhart admitted to Schroeder that two telephones, which were listed on the invoices and paid for by Sears, were purchased for her personal use. Gearhart also stated that all of the items on the invoices were either in the Regional Office or in Gearhart's home. Gearhart told Schroeder that she would reimburse Sears for the cost of anything that Schroeder considered inappropriately charged to Sears. Schroeder responded that Sears had zero tolerance of theft. Gearhart testified in her deposition that she inferred from Schroeder's conduct during the meeting that he thought she had acted improperly.

Gearhart requested and received copies of the relevant invoices to take home and review. Schroeder directed her to locate any invoice items in her office maintained at home, and any receipts or other documentation to prove that she had actually paid for the items herself. Schroeder told Gearhart to bring any documentation to his office on the following Monday, October 28, 1996.

On Saturday, October 25, 1996, Gearhart located copies of her personal checks to OfficeMax issued in March and September 1996. The checks, however, did not match the invoice items at issue. Gearhart gathered supplies and equipment from her home that she had purchased with the company's OfficeMax credit card during the previous nine months. She took the supplies and equipment to Zellers' home and instructed Zellers to return them to the Regional Office on the following Monday. Gearhart also gave Zellers a handwritten note directed to Schroeder and a personal check payable to Sears in the amount of $3,000.00.

Later that day, Zellers notified Schroeder by voicemail that she had possession of the returned items, the check, and the note, and that Gearhart would not be returning to work. Schroeder responded to Zellers the same day and told Zellers that whatever Gearhart wanted to do was fine, that Gearhart's leaving was probably for the best, and that Zellers should bring everything—the returned items, the check, and the note—to him on the following Monday.

On Monday, October 28, 1996, Zellers delivered the check, the note, and the equipment and supplies to Schroeder, who inventoried the returned items. In her note to Schroeder, Gearhart stated:

I am sorry for any pain I have caused [and] wish you the best.... Dr. Soper told me to start using better pens because of carpal tunnel, so [I] justified Sears paying most of the cost because office work was causing it.... I tried to be fair [with] percent of usage between Sears and personal. I have a few more checks to find, but will take that issue up with OfficeMax. I also feel in my heart it is in the best interest of Sears, if I leave and will write a letter.

Also on Monday, October 28, 1996, Gearhart called Zellers and requested a week's leave to extend Gearhart's insurance coverage into November. Schroeder approved leave for that reason. Schroeder and Arquette Bailey, Sears Contract Sales Human Resources Manager, testified in their depositions that, on that Monday, Schroeder called Bailey in Augusta, Georgia and instructed Bailey to remove Gearhart from the Sears payroll because of Gearhart's voluntary resignation. Although Gearhart's last day of work was Friday, October 25, 1996, Schroeder specifically directed Bailey to remove Gearhart from the payroll effective November 1, 1996 because Gearhart had requested vacation pay for the last week. Schroeder also directed Zellers to tell people that Gearhart had resigned to pursue other interests.

On Wednesday, October 30, 1996, Gearhart met with a psychiatrist. After the appointment, Gearhart called Zellers and left a message with her that the doctor recommended that she take medical leave until December 1, 1996. On the bottom of the note from Zellers to Schroeder, Schroeder wrote "CHANGE STATUS ESTE."

On Friday, November 1, 1996, Gearhart telefaxed a handwritten note signed by the

psychiatrist to Sears' Human Resources Department in Augusta, Georgia. The note stated that Gearhart "should take a medical leave of absence until December 1, 1996." On Monday, November 4, 1996, another Human Resources employee informed Bailey that Gearhart had also telephoned Bailey and requested medical leave. Bailey and Richard Steinbach, Sears Contract Sales National Operations Manager, called Schroeder to clear up the apparent inconsistency. Schroeder confirmed to them that Gearhart was no longer on the payroll. Gearhart never received a response to her request for leave.

### B. Facts Specific to Disability Claims

Gearhart first noticed symptoms consistent with carpal tunnel syndrome in 1993 and was formally diagnosed with the condition in 1997. Gearhart never submitted any medical documentation or requested any kind of accommodation from Schroeder for her carpal tunnel syndrome before she left the company. Gearhart did not schedule or undergo carpal tunnel syndrome testing until after her employment with Sears had ended. Gearhart concedes that she did not consider filing a workers compensation claim for the carpal tunnel syndrome until her attorney suggested it after she had left Sears. Gearhart testified that her carpal tunnel syndrome does not prevent her from performing any particular activity.

Gearhart also periodically suffers from depression. According to her own testimony, Gearhart was able to hide her feelings of stress, her depression and her crying spells from the people in her workplace. She, however, told Schroeder that she took medication for depression. Prior to October 31, 1996, Gearhart never provided Sears with any kind of medical opinion regarding her employment, nor did she request an accommodation in her job duties because of depression. Gearhart testified that her depression and anxiety do not prevent her from taking part in any activities.

### C. Facts Specific to Medical Leave Retaliation Claim

On May 5, 1997—more than six months after Gearhart's employment had ended—Zellers signed a statement verifying that she would not disclose confidential Sears information to Gearhart. Gearhart asserts that, for the next few weeks, Zellers acted uncomfortably whenever she talked to Gearhart. Gearhart admits, however, that Zellers did not tell Gearhart that Sears or Schroeder prohibited Zellers from talking with her. Gearhart and Zellers have freely discussed matters related to Gearhart's lawsuit.

### D. Facts Specific to Gender Claims

In the late 1980's, Gearhart applied for, but did not receive, a promotion to lead person in the accounting section. Sears instead selected Charlotte Wagner, a female, to fill the position. Gearhart also applied for, but did not receive, a promotion to the position of Contract Sales office supervisor in the early 1990's. Schroeder selected Donna Decker, a female, for the position.

While Gearhart worked in the Regional Office, other employees, including managers, occasionally told jokes with a sexual connotation. In 1992, Al Zagorniak told a joke regarding women's undergarment liners. Other than that joke, Gearhart is unable to recall other incidents involving jokes or comments of a sexual nature. Zagorniak also used profanity occasionally, but in a nonsexual manner. Gearhart did not complain about Zagorniak because he was a manager. Periodically, Zellers received faxes with a sexual connotation, which she showed to Gearhart. Gearhart considered some of the sexual jokes funny and smiled when she heard them. Otherwise, Gearhart chose not to react to a joke at all. Schroeder referred to Gearhart, along with other women in the Regional Office, as "the girls" and badgered Zellers and Gearhart because they did not have college degrees.

### E. Facts Specific to Age Claims

Gearhart was forty-one years old when her employment with Sears ended. Schroeder has not made any comments about Gearhart's age. Both Schroeder and Zellers are approximately fifty-three or fifty-four years old. In 1991 or 1992, Gearhart heard Schroeder comment to someone on the tele-

phone that a particular salesperson was "too old" and "needs to retire."

### F. Facts Specific to Defamation Claim

Schroeder told Coghlan that Gearhart misused the company credit card to purchase personal items. Coghlan and Schroeder regularly discussed personnel decisions regarding district managers and office personnel. Zellers told several people that Gearhart misused the company credit card.

After leaving Sears, Gearhart attended a job fair. While speaking with the representative of another prospective employer, she informed the representative of the circumstances surrounding her departure from Sears. The representative immediately jotted notes onto Gearhart's resume and ended the interview. Later, she received a rejection letter.

## II. SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

**2.** In her summary judgment response, Gearhart also alleges that she was discharged from employment on the basis of her gender. The court will not address that claim because it was not included in the complaint. The court, however, would reject that claim because Gearhart has no evidence of pretext. *See infra* Part III.C.2.

**3.** Gearhart also brings her discrimination and harassment claims under the Kansas Act Against Discrimination (KAAD), K.S.A. 44–1001 *et seq.* Although not controlling, federal decisions apply-

The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be met by showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. "A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court must consider the record in the light most favorable to the party opposing the motion. *Bee v. Greaves*, 744 F.2d 1387, 1396 (10th Cir.1984).

## III. DISCUSSION

### A. Gender–Based Discrimination

Gearhart alleges that defendants denied her promotions and equal wages[2] on the basis of her gender in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C.2000e *et seq.*, and the Equal Pay Act (EPA), 29 U.S.C. § 201 *et seq.*[3] Because the elements and burdens of proof differ under the two statutes, the court must address each separately. *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1361 n. 3 (10th Cir.1997).

#### 1. Title VII claims

ing Title VII and the ADA are persuasive authority in construing KAAD claims because the statutes are analogous. *See Aramburu v. The Boeing Co.*, 112 F.3d 1398, 1403 (10th Cir.1997); *Best v. State Farm Mut. Auto. Ins. Co.*, 953 F.2d 1477, 1479 (10th Cir.1991); *Woods v. Midwest Conveyor Co.*, 231 Kan. 763, 767, 648 P.2d 234 (1982). Therefore, the court refers only to the federal standards in granting summary judgment on plaintiff's KAAD claims.

The *McDonnell Douglas*[4] burden-shifting analysis applies to cases brought under Title VII. *Sprague*, 129 F.3d at 1362. In failure to promote cases, the employee bears the initial burden to establish a prima facie case by showing, "that there were promotional opportunities available that were filled by males, that she was qualified for promotion, and that despite her qualifications she was not promoted." *Id.* Here, both of the allegedly discriminatory promotions were given to other females. Gearhart has failed to establish a prima facie case under Title VII of failure to promote.

In a Title VII wage discrimination claim, the employee "establishes a prima facie case of sex discrimination by showing that she occupies a job similar to that of higher paid males." *Id.* at 1363. Here, Gearhart offered no evidence of higher paid males in jobs similar to hers. Gearhart has failed to establish a prima facie case of wage discrimination. Accordingly, the Title VII gender-based discrimination claims are dismissed.

### 2. Equal Pay Act Claim

The burden-shifting analysis also applies under the Equal Pay Act. *See Sprague*, 129 F.3d at 1364. To establish a prima facie case under the EPA, the employee must show that, "(1) she was performing work which was substantially equal to that of the male employees considering the skills, duties, supervision, effort and responsibilities of the jobs; (2) the conditions where the work was performed were basically the same; [and] (3) the male employees were paid more under such circumstances." *Id.* As previously stated, Gearhart has failed to offer any evidence that males received higher pay for similar work. Accordingly, Gearhart has failed to demonstrate a prima facie case and the Equal Pay Act claim is dismissed.

### B. Gender–Based Harassment

Gearhart asserts a claim of hostile work environment sexual harassment under Title VII. She alleges that defendants subjected her to sexual jokes, profanity, and demeaning references. The court must determine if a genuine issue of material fact exists as to whether the conduct alleged by Gearhart was (1) was based on her gender or on sexual animus; and (2) severe or pervasive enough to objectively alter the terms, conditions, or privileges of Gearhart's employment. *See Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1539 (10th Cir.1995).

Hostile work environment sexual harassment is behavior that would not occur "but for" the sex of the employee. If the nature of the work environment is not due to the employee's gender, there is no sex discrimination under Title VII. *Gross*, 53 F.3d at 1537; *see also Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir.1994) (harassment not actionable if not based on gender). Here, Gearhart testified in her deposition that Sears employees occasionally told jokes with a sexual connotation, although she could remember only one incident. Gearhart also stated in her deposition that one manager occasionally used profanity, but in a nonsexual manner. Gearhart offered no evidence to suggest that the jokes or profanity were directed at her or other women. Gearhart also testified that Schroeder badgered Zellers and her because they did not have college degrees. Again, there is no basis for believing that such comments were based on Gearhart's gender. Because none of this conduct was based on Gearhart's gender, the court will not consider it.

"[I]n order to prevail on a hostile work environment sexual harassment claim, [plaintiff] is required to show that the unwelcome, sexually-oriented conduct was sufficiently severe or pervasive as to alter the conditions of her employment and create an abusive working environment." *Sprague*, 129 F.3d at 1365. "Conduct that is not severe or pervasive enough to create an objectively hostile environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Harris v. Forklift Systems Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

The court must determine whether the alleged conduct was sufficiently severe or pervasive by considering the totality of the

---

4. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23, 114 S.Ct. 367. Gearhart must establish that an objectively hostile or abusive work environment existed and that she subjectively perceived the work environment to be hostile or abusive. *See id.* at 22, 114 S.Ct. 367.

Defendants argue that Gearhart has failed to show conduct sufficiently severe or pervasive to create an objectively hostile or abusive work environment. The court agrees. Gearhart offered evidence that Zellers occasionally showed her faxes with a sexual connotation and that Schroeder, Gearhart's supervisor, referred to her and Zellers as "the girls." Although such conduct is obviously inappropriate, no reasonable jury could conclude that such evidence established an objectively hostile or abusive work environment.[5] Accordingly, the hostile environment sexual harassment claim is dismissed.

## C. *Disability–Based Discrimination*

The Americans with Disabilities Act (ADA) prohibits discrimination "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The *McDonnell Douglas* burden-shifting analysis applies to cases brought under the ADA. *See Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1323 (10th Cir.1997).

To establish a prima facie case of disability discrimination, Gearhart must demonstrate: (1) that she is a disabled person under the ADA; (2) that she is qualified, i.e., that she can perform the essential functions of the job with or without reasonable accommodation; and (3) that she suffered an adverse employment action based on her dis-

ability. *Id.* If Gearhart raises a genuine issue of material fact as to each element of the prima facie case, the burden then shifts to defendants to articulate some legitimate, nondiscriminatory reason for its conduct. *Randle v. City of Aurora,* 69 F.3d 441, 451 (10th Cir.1995). If defendants carry this burden, it shifts back to Gearhart to prove that the reasons proffered are pretextual— i.e. unworthy of belief. *Id.* Demonstrating pretext gets Gearhart "over the hurdle of summary judgment." *Ingels v. Thiokol Corp.,* 42 F.3d 616, 622 n. 3 (10th Cir.1994). Defendants argue that Gearhart has failed to establish a prima facie case of disability discrimination because she is not disabled and that she has failed to show that defendants' legitimate, nondiscriminatory reason for terminating the employment relationship is pretextual.

### 1. *Disabled*

The ADA defines a disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Gearhart claims that she suffers from carpal tunnel syndrome and from depression.

The court must consider whether either of Gearhart's alleged impairments substantially limits a major life activity. *"Major Life Activities* means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i) (1997) (emphasis in original). "Substantially limits" means "either the inability to perform a major life activity, or a severe restriction on the ability to perform a major life activity as compared to the general population." *Dutton v. Johnson County Bd. of County Comm'rs,* 859 F.Supp. 498, 505 (D.Kan.1994) (citing 29 C.F.R. § 1630.2(j)(1)). Whether Gearhart is substantially limited depends on

---

**5.** Even considering the other jokes and comments, which were not based on Gearhart's gender, the court holds that no reasonable jury would find the conduct severe or pervasive because, at worst, the conduct constituted occasional offensive utterances not directed at plaintiff, and plaintiff failed to show that the conduct interfered with her work performance. *See Harris,* 510 U.S. at 23, 114 S.Ct. 367.

the nature and severity of her impairment, its expected duration, and its expected permanent or long-term impact. 29 C.F.R. § 1630.2(j)(2); *see also Bolton v. Scrivner, Inc.,* 36 F.3d 939, 943 (10th Cir.1994).

 In her response to defendants' motion for summary judgment, Gearhart failed to address which major life activity her carpal tunnel syndrome substantially limits. The court is unable to surmise any such limitation. In her deposition, Gearhart acknowledges that the carpal tunnel condition does not prevent her from participating in any activity and that she is fully able to do her job. Moreover, the fact that Gearhart never requested an accommodation from Sears corroborates that her condition did not substantially limit her ability to do her job without reasonable accommodation. Although she generally alleges that she suffers pain as a result of the condition, pain alone without some corresponding limitation on activity is insufficient to establish a disabling impairment. *See Penny v. United Parcel Serv.,* 128 F.3d 408, 415 (6th Cir.1997) ("moderate difficulty or pain ... does not rise to the level of disability"); *Ellison v. Software Spectrum, Inc.,* 85 F.3d 187, 191 (5th Cir. 1996) (despite pain involved, ability to perform job precluded finding that work was substantially limited). Gearhart has failed to establish that her carpal tunnel syndrome substantially limits a major life activity.

 Gearhart also claims that her depression substantially limits her ability to work. Working is a major life activity. *See* 29 C.F.R. § 1630.2(i). In addition to the factors previously set forth, to determine if Gearhart's depression substantially limits her ability to work, the court must consider whether Gearhart is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3).

Gearhart admitted in her deposition that her depression and anxiety do not prevent her from engaging in any activity. Gearhart asserted in her summary judgment response that after Schroeder approached her regarding the invoices, "she was having trouble concentrating, completing tasks and was thinking suicidal thoughts." That assertion, however, is unsupported in her statement of uncontroverted facts or by any citation to the evidentiary record. *See* D.Kan.Rule 56.1 (requiring specific citations to the evidentiary record). Moreover, Gearhart admits that she had no problems performing her job adequately.

Even if she could show that she was unable to do her job, the well-established law in the Tenth Circuit requires a plaintiff claiming a violation of the ADA to prove more than an inability to perform her existing or former job. *See Welsh v. City of Tulsa,* 977 F.2d 1415, 1417 (10th Cir.1992) (while working is a major life activity, it does not include necessarily "working at the job of one's choice"). Gearhart submitted no evidence that her impairment impacted her ability to perform a class of jobs or a broad range of jobs in various classes. *See Bolton,* 36 F.3d at 943. Furthermore, she has offered no evidence addressing her vocational training, her geographical area, or the number and types of jobs from which she is disqualified. *See id.* at 944. The court finds that Gearhart is not substantially limited in the major life activity of working and there is no genuine issue of material fact whether Gearhart is disabled under the ADA.

*2. Pretext*

 Even if Gearhart could establish a prima facie case of discrimination, she has failed to offer any evidence that defendants' legitimate nondiscriminatory reason is pretextual. Defendants assert that Schroeder terminated Gearhart's employment because he believed that Gearhart had voluntarily resigned from her position. To withstand summary judgment, Gearhart must present evidence that the defendants' proffered reason is unworthy of belief. *Randle,* 69 F.3d at 453. Such evidence must be sufficient to create a reasonable inference that the reason is pretext. *Meredith v. Beech Aircraft Corp.,* 18 F.3d 890, 897 (10th Cir.1994).

Gearhart generally asserts that defendants' reason for terminating her employment is pretextual, but she offers no evidence

to show that she had not voluntarily resigned, nor has she shown that Schroeder did not believe that she had voluntarily resigned. Gearhart offered no testimony that she did not intend to resign. Instead, Gearhart relies on the existence of the handwritten note stating "*CHANGE STATUS ESTE,*" which was written after Gearhart called to request medical leave. At most, the note creates an issue of fact regarding the date Schroeder removed Gearhart from the payroll. When Schroeder removed Gearhart from the payroll is not relevant to whether she voluntarily resigned or if she was terminated on the basis of a disability. Gearhart's own note to Schroeder, together with her conduct, indicate that she voluntarily resigned from employment with Sears. She has failed to raise a genuine issue of material fact showing that the reason for her termination was pretextual. Accordingly, the disability discrimination claim is dismissed.

### D. Disability–Based Harassment

■ Gearhart asserts that she was harassed based on her disability. The harassment claim fails because, as stated previously, Gearhart has failed to establish that she is disabled. *See supra* Part III .C.1. Furthermore, the claim is deficient because, as stated previously, Gearhart has failed to demonstrate that defendants subjected her to severe or pervasive conduct. *See supra* Part III .B. & n. 5. Lastly, the claim fails because Gearhart did not show that any of the alleged conduct was related to Gearhart's alleged disability. *See Aramburu v. Boeing Co.,* 112 F.3d 1398, 1410 (10th Cir.1997) (harassment not actionable if not based on disability). Gearhart did not offer evidence of any conduct other than that previously discussed with respect to the sexual harassment claim. None of the defendants' conduct was facially related to any alleged disability and plaintiff has failed to offer any evidence linking the conduct to her alleged disabilities. Accordingly, the disability harassment claim is dismissed.

### E. Age–Based Discrimination

■ Gearhart contends that defendants discharged her from employment based on her age in violation of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621 *et seq.* The *McDonnell Douglas* burden-shifting approach applies to cases under the ADEA. *Jones v. Unisys Corp.,* 54 F.3d 624, 630 (10th Cir.1995). Initially, Gearhart must establish a prima facie case. *Marx v. Schnuck Markets, Inc.,* 76 F.3d 324, 327 (10th Cir.), *cert. denied,* 518 U.S. 1019, 116 S.Ct. 2552, 135 L.Ed.2d 1071 (1996). Defendants concede that Gearhart can establish a prima facie case. "[T]he burden then shifts to the defendant[s] to articulate a facially nondiscriminatory reason for the adverse employment action." *Id.* Defendants meet their burden of production by alleging that Gearhart voluntarily resigned from her employment. Gearhart must then bear the burden "to show a genuine issue of material fact as to whether the employer's proffered reason for the challenged action is pretextual—i.e. unworthy of belief." *Id.*

■ "Isolated comments, unrelated to the challenged action, are insufficient to show discriminatory animus in termination decisions." *Cone v. Longmont United Hospital Assoc.,* 14 F.3d 526, 531 (10th Cir.1994). A single discriminatory statement .about a third person spoken by an employer representative involved in the termination of an employee is "insufficient to show that age could have been a determinative factor in [defendants'] decision." *Id.* To establish pretext, Gearhart relies solely on her own testimony that, in 1991 or 1992, she overheard Schroeder comment that a particular salesman was "too old" and "needed to retire." No reasonable jury could conclude that the overheard comment alone could establish pretext regarding Gearhart's termination. *See id.* Gearhart has failed to offer sufficient evidence to establish a genuine issue of material fact regarding pretext. Accordingly, the age discrimination claim is dismissed.

### F. Medical Leave Denial

■ Gearhart alleges that defendants denied her request for a medical leave of absence in violation of the Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. § 2601 *et seq.* The FMLA requires employers to

grant up to twelve weeks of leave to employees for specifically stated purposes. 29 U.S.C. § 2612(a)(1). After the leave period, the employer must reinstate the employee to the same or equivalent position. § 2614(a)(1). The FMLA makes it unlawful "for an employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA.]" § 2615(a)(1).

■■■ Gearhart asserts that defendants denied her leave request in violation of the FMLA by terminating her employment. The court disagrees. "Under FMLA, an employee who requests leave or is on leave has no greater rights than an employee who remains at work." *Gunnell v. Utah Valley State College,* 152 F.3d 1253, 1261 (10th Cir. 1998) (citing 29 C.F.R. § 825.216(a)). "If an employee unequivocally advises the employer either before or during the taking of leave that the employee does not intend to return to work, and the employment relationship is terminated, the employee's entitlement to continued leave ... ceases unless the employment relationship continues...." 29 C.F.R. § 825.312(e). Thus, the employee has no greater rights against termination of her employment after she requested medical leave. *Gunnell,* 152 F.3d 1253, 1261.

In *Gunnell,* the plaintiff asserted a § 2615(a)(1) denial claim, "alleging that her employer interfered with her exercise of her FMLA rights by ending her employment, which effectively denied her FMLA leave request." *Id.* Shortly after apparently resigning from her employment, the plaintiff called her employer and requested medical leave, advising her supervisor that her doctor would prepare a report. *Id.* at 1258. After the plaintiff called in sick the next three work days, she received an immediately effective termination letter. *Id.* The Tenth Circuit held that because an employee who requests leave has no greater rights than an employee who remains at work, termination of the employment relationship does not give rise to a claim for denial of leave under § 2615(a)(1). *Id.* at 1261. Like the plaintiff in *Gunnell,* Gearhart's rights under the FMLA ceased upon the termination of her employment and, therefore, she had no right

to medical leave. Gearhart was allowed to take leave during the week prior to the termination of her employment and Sears extended her health coverage during that time. *See id.* at 1261 n. 4 (requiring use of sick leave from date of request to date of termination is consistent with the FMLA). Accordingly, Gearhart's claim for denial of medical leave is dismissed.

## G. Medical Leave Retaliation

Gearhart asserts a medical retaliation claim under 29 U.S.C. § 2615(a)(2), which provides that it is unlawful "for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the FMLA.]" Gearhart contends that defendants discharged her from employment in retaliation for filing a request for medical leave. Gearhart also claims that defendants retaliated against her by cutting off her communication with her friend and former coworker, Zellers.

■■■ The burden-shifting analysis also applies to FMLA retaliation claims. *See Richmond v. ONEOK, Inc.,* 120 F.3d 205, 209 (10th Cir .1997) (applying burden-shifting approach to FMLA claim). To establish a prima facie case of retaliation, Gearhart must show that: (1) she engaged in a protected activity; (2) she suffered adverse action from her employer; and (3) there was a causal connection between her protected activity and her employer's adverse action. *Morgan,* 108 F.3d at 1325. If Gearhart establishes a prima facie case, defendants must produce a legitimate, nondiscriminatory reason for the adverse action. *See Richmond,* 120 F.3d at 209. The burden then returns to Gearhart to produce some evidence that defendants' reason is pretextual. *Id.*

### 1. Discharge

■■■ Defendants first argue that Gearhart has failed to demonstrate a causal relationship between her protected activity and the adverse employment action. "[P]rotected conduct closely followed by adverse action may justify an inference of retaliatory motive." *Marx,* 76 F.3d at 329. *But see Conner v. Schnuck Markets, Inc.,* 121 F.3d 1390, 1395 (10th Cir.1997) ("Unless the termination

is very closely connected in time to the protected conduct, the plaintiff will need to rely on additional evidence beyond mere temporal proximity to establish causation."). Here, viewing the evidence in the light most favorable to Gearhart, Gearhart's termination was initiated the same day that she requested medical leave—October 30, 1996. Such a temporal proximity is sufficient to create an inference of retaliatory motive and establish a prima facie case. *Marx*, 76 F.3d at 329. Defendants contend that they discharged Gearhart because she voluntarily resigned her employment on October 28, 1996.

■ The court next must determine whether Gearhart has created a genuine issue of fact whether defendants' proffered reason for termination is pretextual. "A plaintiff demonstrates pretext by showing either 'that a discriminatory reason more likely motivated the employer or . . . that the employer's proffered explanation is unworthy of credence.'" *Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1455 (10th Cir.1994) (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

Gearhart first argues that the temporal proximity between the leave request and the termination creates a genuine issue of fact whether the discriminatory reason, as opposed to the legitimate reason, was more likely the employer's motivation. Whether the temporal proximity between adverse action and protected activity is sufficient evidence of pretext varies from case to case. *See Conner*, 121 F.3d at 1398 ("Each case turns on its facts."). Gearhart asserts that because she was terminated the same day that she requested leave, that proximity is evidence of pretext. Undoubtedly, in certain cases, Gearhart's contention would be true. *See, e.g., Marx*, 76 F.3d at 329 (denying summary judgment based on pattern of conduct beginning immediately after protected activity). In the instant case, however, the termination occurred almost immediately after defendants' legitimate nondiscriminatory

reason—Gearhart's voluntary resignation. Because the termination occurred almost immediately after Gearhart's resignation, the proximity between the termination and the discriminatory reason does not establish a greater likelihood that the termination was based on the discriminatory reason than the legitimate reason. *See Rea*, 29 F.3d at 1455. In this case, the temporal proximity between the termination and the leave request does not create an inference of pretext. *See Conner*, 121 F.3d at 1398 (no evidence of pretext despite close temporal proximity); *Morgan*, 108 F.3d at 1324–25 (same).

■ Gearhart also argues that the legitimate reason is unworthy of belief because she did not resign, but she offers no testimony to support this argument. · She claims that her note stating, "I also feel in my heart it is in the best interest of Sears if I leave," only indicated her intention to take a leave of absence. Gearhart relies on nothing more than her blanket denial that she resigned and her seemingly disingenuous argument that she was merely suggesting a leave of absence. The record before the court belies Gearhart's contentions. After Schroeder confronted her with his suspicion that she misused the company credit card, Gearhart admitted using the card to purchase personal items. She then gathered up supplies and equipment that she had purchased for her home, wrote Schroeder a note apologizing and indicating that it was best if she leave Sears, and brought them to Zellers home to return to the office. Ultimately, Gearhart failed to come to work on Monday as requested by Schroeder. The court finds that the evidence leads to the inescapable conclusion that she voluntarily resigned. Even if her conclusory testimony might have established a genuine issue of fact whether she intended to resign, she is unable to controvert that Schroeder reasonably believed that she had resigned, which alone is sufficient to constitute a legitimate nondiscriminatory reason for terminating an at-will employment relationship.[6] Gearhart has failed to offer

---

6. Gearhart has failed to offer any evidence to indicate that the employment relationship was other than at-will. Because the general rule in Kansas is employment-at-will, *Wiggins v. Hous-* *ing Auth. of Kansas City*, 22 Kan.App.2d 367, 370, 916 P.2d 718 (1996), "either party is free to end the employment at any time for any reason."

sufficient evidence to create a genuine issue of whether defendants' asserted reason is pretextual.

### 2. Zellers

Defendants argue that Gearhart is unable to establish a prima facie case of retaliation with respect to Sears cutting off communications between Zellers and Gearhart. The court agrees. Viewing the evidence in the light most favorable to Gearhart, Sears required Zellers to sign a confidentiality agreement six months after Gearhart requested medical leave. A six-month delay between the protected activity and the adverse action is insufficient, by itself, to justify an inference of causation. *See Conner,* 121 F.3d at 1395 (four-month delay insufficient); *Richmond,* 120 F.3d at 209 (three-month delay insufficient). Because Gearhart has offered no other evidence to establish a causal connection, she has failed to establish a prima facie case. Accordingly, her FMLA retaliatory discharge claim is dismissed.

### H. Defamation

Gearhart asserts a defamation claim, alleging that Schroeder and Zellers told others that Gearhart had misused the company credit card to purchase personal items. To establish a claim of defamation, Gearhart must show: (1) false and defamatory words; (2) communicated to a third person; and (3) causing harm to the reputation of Gearhart. *Luttrell v. United Tel. Sys.,* 9 Kan.App.2d 620, 620–21, 683 P.2d 1292 (1984), *aff'd,* 236 Kan. 710, 695 P.2d 1279 (1985) (adopting opinion of court of appeals). Truth and privilege are affirmative defenses in a defamation action. *Turner v. Halliburton Co.,* 240 Kan. 1, 7, 722 P.2d 1106 (1986). Defendants contend that summary judgment is appropriate here because: (1) the statements did not cause harm to Gearhart's reputation; (2) the allegedly defamatory statements are true; and (3) Schroeder's statement was privileged.

"The plaintiff must show how his or her true reputation in the community of his or her residence has been affected." *Lindemuth v. Goodyear Tire & Rubber Co.,* 19 Kan.App.2d 95, 103, 864 P.2d 744 (1993). Gearhart testified that she suffered harm after she told her story to a potential employer at a job fair. This harm, however, did not flow from any statement by Schroeder or Zellers, but from Gearhart's own statement.[7] Gearhart failed to offer any evidence that any statement by Schroeder or Zellers caused harm to Gearhart's reputation.

Defendants assert that the allegedly defamatory statements are true. Gearhart admitted that the credit card was used to purchase two telephones for her home. She also admits that she checked the monthly Office-Max invoices and approved payment of them. Gearhart has offered no evidence to refute that she misused the credit card by purchasing the telephones for her personal use. The court finds that the allegedly defamatory statements are true.

Gearhart alleges that Schroeder told Coghlan that she misused the company credit card. Defendants assert that such statement is privileged. The court agrees. "A communication is qualifiedly privileged if it is made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a duty, if it is made to a person having a corresponding interest or duty." *Luttrell,* 9 Kan.App.2d at 622, 683 P.2d 1292. To establish that a communication is privileged, defendants must show: (1) the speaker acted in good faith; (2) the speaker acted pursuant to a legitimate interest or duty; (3) the statement was limited to that necessary to uphold the interest; and (4) the statement was published in a proper manner to proper parties. *Id.* Defendants have shown that Schroeder believed that Gearhart had used the company credit card to procure personal items for her

*Palmer v. Brown,* 242 Kan. 893, 896, 752 P.2d 685 (1988).

7. Although a compelled self-publication may be an adequate basis for a defamation action against the former employer, *see Booth v. Electronic Data Systems Corps.,* 799 F.Supp. 1086, 1091 (D.Kan.1992), the alleged harm resulting from Gearhart's own statement is irrelevant here because only Schroeder's statements were pleaded in the complaint.

home. As Gearhart's supervisor, Schroeder had an interest in addressing personnel issues involving suspected theft of company property. Schroeder told Coghlan only that Gearhart had misused the credit card for personal items. Coghlan was a proper party for Schroeder to communicate the information to because he was a manager in the company with an interest in personnel issues. *See Turner,* 240 Kan. at 10, 722 P.2d 1106. The court finds that Schroeder's statement to Coghlan is privileged. Accordingly, the defamation claim is dismissed.

### I. Negligent Infliction of Emotional Distress

■■■ Gearhart asserts a claim of negligent infliction of emotional distress. "There may be no recovery in Kansas for emotional distress unless that distress results in 'physical impact': an actual physical injury to the plaintiff.... Generalized physical symptoms of emotional distress such as headaches and insomnia are insufficient to state a cause of action." *Anderson v. Scheffler,* 242 Kan. 857, 860, 752 P.2d 667 (Kan.1988).

In *Anderson,* the plaintiff suffered shock, emotional pain, feelings of guilt, recurring nightmares, and depression after his brother's leg was amputated in an auger accident. *Id.* The Kansas Supreme Court affirmed summary judgment for the defendant because there was no physical injury. *Id.* Likewise, there is no physical injury here. Gearhart offers evidence only that she suffered depression and crying spells. Neither rise above generalized physical symptoms, which are insufficient to state a cause of action. *See id.* Accordingly, the negligent infliction of emotional distress claim is dismissed.

### J. State Retaliatory Discharge

■■■ Gearhart also asserts a state common law retaliatory discharge claim, alleging that she was terminated in retaliation for filing a request for medical leave. Defendants request summary judgment on two grounds: (1) an adequate federal remedy exists; and (2) denial of medical leave does not implicate the public policy bases for a retaliatory discharge action.

The Tenth Circuit has expressly rejected state common law retaliatory discharge claims when there is an adequate federal statutory remedy. *Conner,* 121 F.3d at 1399. If Gearhart's claim had merit, she had an adequate federal statutory remedy under the FMLA. She may not bring a common law retaliatory discharge claim.

■■■ Even if there was no alternative federal remedy, Gearhart's claim fails because medical leave denial is not one of the public policy bases for asserting a retaliatory discharge claim. The retaliatory discharge exception to employment-at-will in Kansas is very narrow. *Lange v. Showbiz Pizza Time, Inc.,* 12 F.Supp.2d 1150, 1152 (D.Kan.1998). Kansas courts have recognized the retaliatory discharge claim for only two public policy violations: (1) retaliation for exercising rights under the workers compensation laws; and (2) retaliation for reporting employer violations of rules, regulations, or laws regarding public health, safety, or general welfare. *Id.* Retaliatory discharge for filing a request for medical leave is not recognized under Kansas law. *Id.* Accordingly, the state common law retaliatory discharge claim is dismissed.

### K. Request for Sanctions

Defendants' counsel requests the court to order sanctions against plaintiff's counsel under Fed.R.Civ.P. 11. Defendants' counsel contends that, after receiving defendants' motion for summary judgment, plaintiff's counsel asserted to defendants' counsel that the FMLA retaliation claim was actually a state common law retaliatory discharge claim. Although defendants' counsel showed plaintiff's counsel the overwhelming authority rejecting such a claim if there is an alternative federal statutory remedy, plaintiff's counsel persisted. Thus, defendants' counsel was forced to file a supplemental motion for summary judgment. Despite defendants' counsel's diligence in trying to avoid the extra costs of litigation by approaching plaintiff's counsel about the impropriety of plaintiff's state common law retaliatory discharge claim under these circumstances, plaintiff's counsel insisted on prosecuting the claim. Accordingly, the court orders plaintiff's coun-

sel to show cause why he should not be sanctioned $500.00 for pursuing a frivolous claim in violation of Fed.R.Civ.P. 11(b)(2).

IT IS, THEREFORE, ORDERED that defendants' motion (Doc. 72) for summary judgment is granted.

IT IS FURTHER ORDERED that plaintiff's counsel show cause in writing on or before November 2, 1998, why he should not be sanctioned $500.00 for pursuing a frivolous claim in violation of Fed.R.Civ.P. 11(b)(2).

IT IS FURTHER ORDERED that all remaining pending motions (Doc. 104, 107) are denied as moot.

Copies of this order shall be mailed to counsel of record for the parties.

**IT IS SO ORDERED.**