Phelan v. Town of Derry                  CV-98-013      12/0998
                    UNITED STATES DISTRICT COURT FOR THE
                          DISTRICT OF NEW HAMPSHIRE


Sharon Curtis Phelan

        v.                                    Civil No. 98-013-JD

Town of Derry, Derry Public
Library, and John Courtney


                              O R D E R


        Plaintiff, Sharon Phelan, brings claims under the Family and

Medical Leave Act ("FMLA"), 29 U.S.C.A. § 2617, against her

former employers, the town of Derry and the Derry Public Library,

and state law claims for wrongful discharge and intentional

infliction of emotional distress against her former employers and

the Library Director, John Courtney.  The Library and Courtney

move for judgment on the pleadings as to Phelan's wrongful

discharge claims and her emotional distress claim against the

Library (document no. 11).  Phelan does not contest defendants'

motion as to her wrongful discharge claim against John Courtney,

but objects as to dismissal of her claims against the Library.

## Background[1]

Sharon Phelan was the head of Children's Services at the Derry Public Library. In October of 1995, she asked to take an unpaid leave from work in order to care for her husband who had been diagnosed with terminal cancer. She began her leave on October 16 and remained on leave through the remainder of 1995.

Phelan was not given any of the written notice required under the FMLA to be provided to employees by their employers. She was not told that the leave would count against the twelve work-weeks of leave allowed during any particular twelve-month period, or against her annual leave. She also was not told how the twelve-month period was being calculated for purposes of the FMLA, nor did the Library and town choose a method of calculation.

As the twelfth week of her leave approached, John Courtney, the Director of the Library, told Phelan that she would have to return to work full time or lose her job. She told him that her husband's condition was extremely grave and that she would like additional leave to be taken against her 1996 leave entitlement under the FMLA. Courtney responded, without first investigating whether additional leave would be available as Ms. Phelan had

_____

[1]The background factual summary is taken from the allegations in plaintiff's complaint.

requested, that she was not entitled to any additional leave and that she would have to return to work or be discharged. When Phelan informed Courtney in January of 1996 that she would not return to work that month due to her husband's deteriorating health, he fired her. Courtney knew when he fired Phelan that her husband was dying and that she had a two-year old daughter.

Phelan believed that she was fired in part because of her disclosures to a consultant hired by Courtney to evaluate staff morale problems at the Library. Phelan told the consultant that Courtney's relationship and rumored affair with a former Library employee and the preferential treatment the employee had enjoyed had badly damaged staff morale. The consultant then confronted Courtney with the information and told him that his efforts to evaluate staff morale problems had been undermined by Courtney's failure to disclose his relationship with the former employee. When Courtney learned that the Library staff knew of his relationship, he became extremely upset and angry. He correctly concluded that Phelan told the consultant about the relationship.

Phelan's husband died in March of 1996. She filed suit in January of 1997.

## Standard of Review

"Federal Rule of Civil Procedure 12(c) allows a party, '[a]fter the pleadings are closed but within such time as not to delay the trial, [to] move for judgment on the pleadings.'" Feliciano v. State of Rhode Island, No. 98-1436, 1998 WL 789181, *8 (1st Cir. Nov. 18, 1998) (quoting Fed. R. Civ. P. 12(c)).  In making its inquiry, the court must accept all of the factual allegations in the complaint as true, and draw every reasonable inference in favor of the plaintiffs.  See Santiago de Castro v. Morales Medina, 943 F. 2d 129, 130 (1st Cir. 1991).  "Great specificity is not required to survive a Rule 12 motion. [I]t is enough for a plaintiff to sketch an actionable claim by means of a generalized statement of facts."  Garita Hotel Ltd. Partnership v. Ponce Fed. Bank, 958 F.2d 15, 17 (1st Cir. 1992) (quotation omitted).  Thus, judgment on the pleadings is appropriate only if "'it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claims which would entitle [her] to relief.'"  International Paper Co. v. Jay, 928 F.2d 480, 482 (1st Cir. 1991) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).


## Discussion

The Library moves for judgment in its favor on Phelan's wrongful discharge claim, arguing that the common law cause of

4

action is replaced by the FMLA and that she cannot show that she was discharged in violation of public policy. The Library also contends that New Hampshire's workers' compensation law bars Ms. Phelan's claim for intentional infliction of emotional distress. As Phelan does not oppose John Courtney's motion to dismiss the wrongful discharge claim against him, Count V in the complaint is dismissed without further discussion.

A. Wrongful Discharge and FMLA

The Library contends that the FMLA preempts Phelan's state common law cause of action for wrongful discharge based on her allegations that she was fired for exercising her rights under the FMLA. Phelan argues that the FMLA was not intended to supplant existing state law remedies[2] so that her FMLA claim does not preclude her wrongful discharge claim based on FMLA rights. Phelan's objection to preclusion is contrary to settled law. See Cooper v. Thomson Newspapers, Inc., 6 F. Supp.2d 109, 115 (D.N.H. 1998) (addressing preclusion of wrongful discharge claims based on FMLA); see also Smith v. F. W. Morse & Co., 76 F.3d 413, 429 (1st Cir. 1996) (addressing preclusion of wrongful discharge

___

[2]The statutory language Phelan cites does not support her argument. The cited provisions state that the FMLA is not to be construed to supersede state or local law providing greater leave rights than the FMLA but the provisions are silent as to state law remedies addressing violations of the FMLA.

5

claim by Title VII under <u>Wenners v. Great State Beverages, Inc.</u>, 140 N.H. 100 (1995)); <u>Gearhart v. Sears, Roebuck & Co., Inc.</u>, No. 97-2456-GTV, 1998 WL 781144 at *14 (D. Kan. Oct. 19, 1998) (holding state retaliatory discharge claim precluded by FMLA); <u>Vargo-Adams v. United States Postal Serv.</u>, 992 F. Supp. 939, 944 (N.D. Ohio 1998) (same); <u>Hamros v. Bethany Homes and Methodist Hosp.</u>, 894 F. Supp. 1176, 1179 (N.D. Ill. 1995) (same). <u>But c.f.</u> <u>Mora v. Chem-Tronics, Inc.</u>, 16 F. Supp.2d 1192, 1231 (S.D. Cal. 1998) (following <u>Ely v. WalMart Inc.</u>, 875 F. Supp. 1422 (N.D. Cal. 1995) and allowing state claim for wrongful discharge in violation of public policy based on FMLA where defendant agreed claim was not preempted). Accordingly, as Phelan also seeks a remedy for retaliatory discharge under the FMLA against the Library, her state law claim for retaliatory discharge is precluded by the remedy afforded by the FMLA.

That is not the end of the story, however. Phelan alleges that the town of Derry and the Library were her employers and brings FMLA as well as state wrongful discharge claims against each. The implication is that she is pleading in the alternative, meaning either the town or the Library as a separate entity was her employer. <u>See</u> Fed. R. Civ. P. 8(e)(2). However, in her objection to the Library's motion, Phelan raises a fundamental question about her claim against the Library, as her

6

employer under the FMLA, by conceding that she does not now believe that the Library qualifies as an employer as defined in the FMLA.[3] She urges that her state law wrongful discharge claim be allowed because she would not have a viable FMLA claim if the Library, and not the town of Derry, was her employer. For its part, the Library carefully avoids admitting whether it was or was not Phelan's employer, and, if so, whether the FMLA would apply. The town has remained on the sidelines for this round of motions. If Phelan intends to voluntarily dismiss her claim under the FMLA against the Library, as seems likely based on statements in her objection, it is not clear on what basis she would claim wrongful discharge as retaliation for exercising her rights under the FMLA.

Given the uncertainty about Phelan's FMLA claim against the Library, judgment on the pleadings on her state retaliatory discharge claim would be inappropriate at this time. Instead, Phelan's FMLA and related state wrongful discharge claims would

---

[3]The FMLA defines "employer" as "any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year." 29 U.S.C.A. § 2611(4)(A)(i) (West. Supp. 1998). "Employer" also includes "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer, . . . any successor in interest of an employer" and "any 'public agency', as defined in section 203(x) of this title." § 2611(4)(A)(ii) and (iii).

be more properly addressed in a motion for summary judgment, if necessary, where factual issues would be addressed and resolved.[4] Accordingly, the Library's motion for judgment on the pleadings with respect to Phelan's state law FMLA-based retaliatory discharge claim is denied without prejudice.

B.   Wrongful Discharge and Public Policy

Phelan also alleges that John Courtney fired her because she gave candid answers to the consultant's questions about morale problems with the Library staff.  She contends that her termination was motivated by malice or retaliation and was in violation of public policy giving rise to a cause of action recognized under Cloutier v. Great Atlantic and Pacific Tea Co., 121 N.H. 915, 921-11 (1981).[5]  The Library seeks dismissal of

---

[4]If summary judgment motions are filed, the parties are to address Phelan's employment relationship with the defendants and the relationship between the town of Derry and the Derry Public Library (i.e. are they entirely separate entities, separate public employers, or is the Library merely a town agency?) The court does not understand why the parties have neither clarified nor raised this issue up to this point in time, and reminds the parties that the court lacks jurisdiction to provide advisory opinions not grounded on a controversy based on the particular facts of the case presented. See, e.g., Inacom Corp. v. Massachusetts, 2 F. Supp. 2d 150,153 (D. Mass. 1998).

[5]For an employee-at-will to state a claim for wrongful termination, she must allege facts showing "one, that the employer terminated the employment out of bad faith, malice, or retaliation; and two, that the employer terminated the employment because the employee performed acts which public policy would

that aspect of Phelan's state wrongful discharge claim on grounds that, as a matter of law, her termination was not in violation of a public policy.

The Library acknowledges that the question of whether public policy is implicated in a termination is usually a matter to be decided by a jury, but argues that in this case it can be determined as a matter of law. See Short, 136 N.H. at 84-85. To that end, the Library characterizes Phelan's activity as follows: "she complained that the Director of the Library was having a consensual relationship with a subordinate." Such a complaint, the Library urges, is not an action implicating public policy. The Library's version does not comport with the complaint.

Taking Phelan's allegations as true and in the light most favorable to her, as is necessary when considering a motion for judgment on the pleadings, Courtney fired her because she truthfully responded when asked about issues with staff morale. She did not "complain," and she did not invite conversation about the issue. She candidly participated in an evaluation, that Courtney initiated, when she was questioned by the consultant. Her alternative to telling the truth would have been to lie to the consultant about what she thought had affected staff morale.

_____

encourage or because [she] refused to perform acts which public policy would condemn." Short v. School Admin. Unit 16, 136 N.H. 76, 84 (1992) (citing Cloutier, 121 N.H. at 921-22).

9

Taken in the proper light for purposes of this order, public policy cannot be eliminated as a matter of law. As in Cilley, a jury might reasonably find that Phelan was fired for telling the truth to the consultant when asked, and "that public policy supports such truthfulness." Cilley v. N.H. Ball Bearings, 128 N.H. 401, 406 (1986). Thus, the public policy issue must be left to the jury in this case.

C.    Intentional Infliction of Emotional Distress and the Workers' Compensation Law

The Library contends that the exclusivity provision of the New Hampshire's Workers' Compensation law, New Hampshire Revised Statutes Annotated ("RSA") § 281-A:8, precludes Phelan's intentional infliction of emotional distress claim. Phelan acknowledges that ordinarily a claim for emotional distress is barred, but contends that her claim alleges an intentional injury that is not included within the statutory framework. See Brewer v. K.W. Thompson Tool Co., Inc., 647 F. Supp. 1562, 1566 (D.N.H. 1986) (quoting and discussing 2A Larson, The Law of Workmen's Compensation § 68.13 (1983)).

To impose liability on an employer for an intentional injury, the employer must itself intend the injury rather than be deemed to have acted constructively through an agent. 6 Larson's

10

Workers' Compensation Law § 68.11 (1997). To be deemed the employer, the actor must be the alter ego of the corporate entity rather than simply a fellow employee or even a supervisor or manager. Id. at § 68.22 (1993); see also Higgins v. Toys 'R' Us, No. 98-18-SD slip op. at 4 (D.N.H. June 23, 1998). In contrast, under the New Hampshire statute, the exclusivity of the workers' compensation law does not bar claims for intentional torts brought against "any officer, director, agent, servant or employee acting on behalf of the employer." RSA § 281-A:8, I(b) (Supp. 1997).

Phelan alleges that the Library is liable for Courtney's intent to inflict emotional distress based on a theory of respondeat superior. Thus, based on Phelan's pleadings alone, Courtney, but not the Library as the entity allegedly employing her, intended to cause her injury. See Marquay v. Eno, 139 N.H. 708, 718 (1995) (distinguishing direct from vicarious liability of an employer). Due to her theory of liability, Phelan includes no facts that would suggest Courtney was acting as the Library, rather than on behalf of the Library, or suggesting Courtney was the alter ego of the Library. Accordingly, Phelan's intentional

11

infliction of emotional distress claim against the Library is barred by RSA 281-A:8.

Conclusion

For the foregoing reasons, defendants' motion for judgment on the pleadings (document no. 11) is granted with respect to plaintiff's wrongful discharge claim against John Courtney (Count V) and her intentional infliction of emotional distress claim against the Library (Count VII), and is denied as to the wrongful discharge claim based on cooperation with the consultant and denied without prejudice as to the FMLA retaliatory wrongful discharge claim (Count IV).

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
District Judge

December 9, 1998

cc: Keith S. Halpren, Esquire
    Anthony S. Hartnett, Esquire
    Edmund J. Boutin, Esquire
    Steven E. Hengen, Esquire
    Diane M. Quinlan, Esquire

12