Kathleen ELY, Plaintiff,

v.

WAL*MART, INC., an Arkansas Corporation; and Does 1 through 50, inclusive, Defendants.

No. ED CV 94–0284 RT (BQRx).

United States District Court, C.D. California, Eastern Division.

Feb. 9, 1995.

Marc D. Roberts and David Mule, Marc D. Roberts and Associates, Palm Desert, CA, for plaintiff.

John L. Barber, Gray, York, Duffy & Rattet, Encino, CA, for defendants.

ORDER DENYING DEFENDANT WAL\*MART, INC.'s MOTION TO DISMISS PLAINTIFF ELY'S FIRST AND SEVENTH CLAIMS FOR RELIEF

TIMLIN, District Judge.

Defendant Wal\*Mart, Inc.'s (Wal\*Mart's) motion to dismiss plaintiff Kathleen Ely's (plaintiff's) first and seventh claims for relief in her original complaint[1] (motion) was heard on or about 10 a.m. on January 23, 1995 before the Honorable Judge Robert J. Timlin.

Marc D. Roberts and David Mule, Marc D. Roberts and Associates, appeared for plaintiff. John L. Barber, Gray, York, Duffy & Rattet appeared for Wal\*Mart.

The court having taken the matter under submission, and after consideration of oral argument and all papers presented to the court, the court will deny Wal\*Mart's motion to dismiss for the reasons set forth in the following opinion.

## I.

### *Procedural History*

On October 31, 1994, plaintiff filed, in Riverside County Superior Court, a complaint against her former employer, Wal\*Mart. The complaint contained seven claims:

(1) wrongful discharge in contravention of public policy (public policies as stated in the California Family Care and Medical Leave Act, Government Code section 12945.2 et seq.),[2]

(2) breach of contract,

(3) breach of the implied covenant of good faith and fair dealing,

(4) intentional interference with prospective business advantage,

(5) defamation,

(6) violation of California Labor Code section 1050, and

(7) intentional infliction of emotional distress.

Wal\*Mart removed the action to this court based on diversity of citizenship, and then filed the instant motion, asserting that plaintiff failed "to state a cognizable legal theory as well as ... sufficient facts under a cognizable legal theory" (1) as to her first claim, for wrongful discharge in contravention of public policy as stated in the Moore–Brown–Roberti Family Rights Act, Government Code section 12945.2 et seq. (Family Rights Act), and (2) as to her seventh claim for relief, for intentional infliction of emotional distress.

1. After the motion was filed, plaintiff filed a first amended complaint which resulted in her seventh claim becoming her eighth claim.

2. Plaintiff's name for this act is incorrect, and she has since corrected it in her amended complaint; it is actually the Moore–Brown–Roberti Family Rights Act of 1991.

## II.

### *Factual Background*

According to the allegations of the complaint, Wal*Mart is an employer with more than five employees. On August 13, 1992, plaintiff was hired as a department manager at Wal*Mart's La Quinta store. In November 1992, she became department manager of the women's department at that store, and as such earned $7.65 per hour.

On or about April 19, 1994, she had a ruptured hernia and required emergency surgery. The next morning, plaintiff's spouse contacted plaintiff's assistant store manager, Gene Scales, and told him that plaintiff had undergone emergency surgery and was unable to report to work. Later that day, plaintiff's spouse called and spoke to assistant store manager, Ken Rice, and told him that plaintiff would be hospitalized for five to six days, and would then need five to six weeks of recuperation at home.

Two days later, plaintiff herself called her manager, Krista Feaster, and local personnel officer, Billie Jay, and told them she would give them a back-to-work date as soon as she would be released by her doctor.

On or about June 20, 1994, plaintiff was released to return to work. Upon her return, the store manager, Michael Halbert, advised her that she would not be reinstated in her former position. Instead, she could return as a cashier, a position not comparable to her former position as department manager, and which position paid only $6.50 per hour. Halbert told her that if she did not take this position, she would be terminated. Plaintiff refused the position and, according to the allegations of her complaint, "was thereby constructively terminated."

In August 1994, plaintiff interviewed with Woman's World Shops in Palm Desert, and that company agreed to hire her as a full-time employee at a rate of $7.50 per hour. Plaintiff accepted the offer and arranged the dates upon which she would report to work. Thereafter, Woman's World Shops rescinded its offer. Plaintiff's complaint alleges, on information and belief, that this occurred because Woman's World Shops contacted Wal*Mart and spoke to Feaster to verify plaintiff's prior employment, and Feaster then told Woman's World Shops that plaintiff was in litigation with Wal*Mart, knowing that such statement was false, and with the intent to stigmatize plaintiff as a troublemaker so as to prevent her from being employed by Woman's World Shops, which conduct plaintiff alleges would be a violation of California Labor Code section 1050.

Plaintiff further alleges that there was a written contract of employment between herself and Wal*Mart as evidenced by the Wal*Mart Employee Handbook. This handbook included written personnel policies which provided for:

(a) medical leaves of absence, allowing employees to be absent from work for the purpose of receiving medical treatment, and to be reinstated upon recovery, and

(b) emergency leaves of absence for the purpose of allowing an employee to handle a crisis or emergency such as a serious illness, and then to be reinstated upon recovery.

An excerpt from the handbook as to these policies is attached as Exhibit A to the complaint.[3] Plaintiff alleges that she fully complied with all the conditions of this contract as required by the procedures and policies in the handbook; Wal*Mart, however, breached its responsibilities under the contract.

Wal*Mart contends in its motion that plaintiff's first claim, for wrongful discharge in contravention of public policy, as stated in the Family Rights Act, must be dismissed, because California law requires that claims for wrongful discharge in contravention of public policy must be predicated upon a statute or constitutional provision which has been recognized as embodying "fundamental" and well-established public policy. According to Wal*Mart, plaintiff is attempting to advance her claim under the auspices of the Family Rights Act portion of California's Fair Employment and Housing Act, (FEHA), which it describes as "a statute which cannot

---

**3.** The written excerpt from the employee handbook does not say anything specific about employees being reinstated to the same or comparable position upon return.

be relied upon for a *tortious* wrongful discharge."

Wal*Mart also urges that because plaintiff cannot state a claim for wrongful discharge in violation of public policy and she does not allege any outrageous conduct by Wal*Mart outside the employment relationship, she also cannot state a claim for intentional infliction of emotional distress, and thus her seventh claim must be dismissed, too. Wal*Mart also asserts that plaintiff's claim for intentional infliction of emotional distress is subsumed by the exclusive remedies of the worker's compensation system.

Plaintiff in opposition contends that Wal*Mart has misread the case law, and that violations of FEHA's provisions relating to the Family Rights Act may form the basis for a claim for wrongful discharge in violation of public policy.

Plaintiff further argues that case law demonstrates that worker's compensation laws do not preempt a claim for intentional infliction of emotional distress based on violations of FEHA.

## III.

### *Discussion*

A. *Plaintiff Has Stated a Sufficient Claim for Wrongful Termination in Violation of the Public Policy Contained in The Family Rights Act*

In California, an at-will employee may bring a tort action for wrongful discharge in violation of public policy so long as the basis for the public policy at issue is rooted in a statutory or constitutional provision. *Gantt v. Sentry Insurance,* 1 Cal.4th 1083, 1090, 1095, 4 Cal.Rptr.2d 874, 824 P.2d 680 (1992).

The reason for requiring that the public policy be delineated by a statute or constitutional provision is that "A public policy exception carefully tethered to fundamental policies that are delineated in constitutional or statutory provisions strikes the proper balance among the interests of employers, employees and the public. The employer is bound, at a minimum, to know the fundamental public policies of the state and

nation as expressed in their constitutions and statutes; so limited, the public policy exception presents no impediment to employers that operate within the bounds of law. Employees are protected against employer actions that contravene fundamental state policy. And society's interests are served through a more stable job market, in which its most important policies are safeguarded." (1 Cal.4th at p. 1095, 4 Cal.Rptr.2d 874, 824 P.2d 680.)

Although the court in *Gantt* did not specifically define what it meant by a "fundamental" policy, the above-noted quote clearly implies that a public policy is fundamental if it is expressed in a statute or constitution, rather than in case law and administrative rules and regulations. (See 1 Cal.4th at pp. 1089–1095, 4 Cal.Rptr.2d 874, 824 P.2d 680; sep. opn. by Kennard, J., conc. & diss. at pp. 1102–1104.) The term "fundamental," when used to describe the kind of public policy which must form the basis for a claim of wrongful discharge in contravention of public policy, also means that the public policy is one which benefits the public in general, not just the discharged employee. *Rojo v. Kliger,* 52 Cal.3d 65, 89, 276 Cal.Rptr. 130, 801 P.2d 373 (1990): the underlying public policy "must be 'fundamental' and 'public' in nature, i.e., 'one which inures to the benefit of the public at large rather than to a particular employer or employee.' [Citation.]"

Here, plaintiff's tort claim for wrongful discharge in violation of public policy is premised on the Family Rights Act, which provides, in relevant part:

"(a) Except as provided in subdivision (b), it shall be an unlawful employment practice for any employer, as defined in paragraph (2) of subdivision (c), to refuse to grant a request by any employee with more than 12 months of service with the employer, and who has at least 1,250 hours of service with the employer during the previous 12–month period, to take up to a total of 12 workweeks in any 12–month period for family care and medical leave. Family care and medical leave requested pursuant to this subdivision shall not be deemed to have been granted unless the employer provides the employee, upon grant-

ing the leave request, a guarantee of employment in the same or a comparable position upon the termination of the leave. The commission shall adopt a regulation specifying the elements of a reasonable request.

"(b) Notwithstanding subdivision (a), it shall not be an unlawful employment practice for an employer to refuse to grant a request for family care and medical leave by an employee if the employer employs less than 50 employees within 75 miles of the worksite where that employee is employed.

"(c) For purposes of this section:

" . . . .

"(3) 'Family care and medical leave means any of the following:

" . . . .

"(C) Leave because of an employee's own serious health condition that makes the employee unable to perform the functions of the position of that employee, . . . ."

"(4) 'Employment in the same or comparable position' means employment in a position that has the same or similar duties and pay that can be performed at the same or similar geographic location as the position held prior to the leave . . . . ."

As originally enacted,[4] the Family Rights Act only referred to family care leave, and did not contain any provisions for medical leave required due to an employee's own health problem. The provisions relating to medical leave for employees were added and became effective on October 5, 1993.[5]

Additionally, the public policy behind FEHA, of which the Family Rights Act is a

part, is set out in California Government Code section 12920. Section 12920 states that it is "the public policy of this state that it is necessary to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgment on account of . . . physical disability, . . . [and] medical condition, . . ." and that discriminatory practices foments "strife and unrest, deprives the state of the fullest utilization of its capacities for development and advance, and substantially and adversely affects the interest of employees, employers and the public in general." [6]

■ It would thus appear that a claim for relief premised on a violation of the Family Rights Act is based upon clear public policy which is fundamental in the sense required by *Gantt* and *Rojo:* the public policy is contained in a statutory provision and it is a policy "which inures to the benefit of the public at large rather than to a particular employer or employee."

Wal*Mart, however, contends that case law has held that FEHA, in which the Family Rights Act is found, is "inadequate as a source of public policy sufficient to support a wrongful discharge claim." Wal*Mart cites *Strauss v. Randall,* 144 Cal.App.3d 514, 518–520, 194 Cal.Rptr. 520 (1983) for this proposition, acknowledging that its holding was "slightly modified" by *Rojo v. Kliger,* 52 Cal.3d 65, 276 Cal.Rptr. 130, 801 P.2d 373, *supra.* It also cites *Jennings v. Marralle,* 8 Cal.4th 121, 32 Cal.Rptr.2d 275, 876 P.2d 1074 (1994) as support for this contention.

4. Stats.1991, ch. 462, § 4 (A.B. 77).

5. Stats.1993, ch. 827, § 1 (A.B. 1460).

6. Notably, the provisions in the Family Rights Act related to medical leave parallel those of the federal Family and Medical Leave Act of 1993 (P.L. 103–3), 29 U.S.C. § 2601 et seq., which contains similar family care and medical leave provisions. Congress found, in 29 U.S.C. § 2601(a)(4), that "there is inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods;" and that the purpose of the Act was to "(b)(1) . . . balance the demands of the workplace with the needs of families, to promote the stability and economic security of families,

and to promote national interests in preserving family integrity; ¶ (2) to entitle employees to take reasonable leave for medical reasons, . . . ¶ (3) to accomplish the purposes described in paragraphs (1) and (2) in a manner that accommodates the legitimate interests of employers; ¶ (4) to accomplish the purposes described in paragraphs (1) and (2) in a manner that, consistent with the Equal Protection Clause of the Fourteenth Amendment, minimizes the potential for employment discrimination on the basis of sex by ensuring generally that leave is available for eligible medical reasons. . . . on a gender-neutral basis; and ¶ (5) to promote the goal of equal employment opportunity for women and men, pursuant to such clause."

As discussed below, neither *Strauss v. Randall* nor *Jennings v. Marralle* held that a violation of a statutory provision contained in FEHA cannot be a violation of fundamental public policy as grounded in certain portions of the FEHA.

In *Strauss v. Randall, supra,* 144 Cal. App.3d 514, 194 Cal.Rptr. 520, an age discrimination case, the employee filed a civil suit alleging a common law cause of action for wrongful discharge in violation of public policy. Asserting that no common law remedy for age discrimination predated the Fair Employment Practices Act (FEPA) (FEPA is now subsumed in FEHA), the court of appeal held that when the Legislature created this statutory right of redress for such discrimination, it intended it to be the exclusive remedy. (144 Cal.App.3d at p. 524, 194 Cal.Rptr. 520; *Rojo v. Kliger,* 52 Cal.3d at p. 81–82, 276 Cal.Rptr. 130, 801 P.2d 373, *supra.*)

However, the decision in *Strauss v. Randall* was called into question by *Rojo v. Kliger,* and the *Rojo* court specifically rejected *Strauss v. Randall*'s conclusion that there could be no common-law action for wrongful discharge in violation of public policy unless there had been a preexisting cause of action for the particular kind of discrimination involved:

"*Strauss* and its progeny needlessly invoked the 'new right—exclusive remedy' doctrine of interpretation. Because the FEHA, like its predecessor the FEPA, expressly disclaims any intent to displace other relevant state laws, no resort to interpretative aids is required and the existence vel non of a preexisting cause of action for the particular discrimination is irrelevant. While the FEHA conferred certain new rights and created new remedies, its purpose was not to narrow, but to expand the rights and remedies available to victims of discrimination. (§§ 12993, 12920.) Under the act, plaintiffs are free to seek relief for injuries arising from discrimination in employment under any state law, without limitation.

"In sum, we hold that the FEHA does not displace any causes of action and remedies that are otherwise available to plaintiffs." 52 Cal.3d at p. 82, 276 Cal.Rptr. 130, 801 P.2d 373, fn. omitted; see also *Blom v. N.G.K. Spark Plugs, Inc.* (1992) 3 Cal.App.4th 382, 387–388, 4 Cal.Rptr.2d 139, which concluded that after *Rojo,* plaintiffs may pursue common-law tort causes of action for wrongful discharge in violation of the policies contained in FEHA, even when the policies did not preexist FEHA.

Wal*Mart argues, nonetheless, that despite the holding in *Rojo v. Kliger,* a plaintiff can only pursue a common-law cause of action for an alleged violation of FEHA if the actionable conduct is *also* prohibited by the California Constitution or some other, independent statutory source reflecting a fundamental public policy against such conduct. It cites *Jennings v. Marralle,* 8 Cal.4th 121, 135, 32 Cal.Rptr.2d 275, 876 P.2d 1074, *supra,* for this proposition.

In *Jennings,* the California Supreme Court concluded that there is no fundamental public policy supporting a wrongful discharge for age discrimination by a small employer, i.e., by an employer of four or fewer employees: "It would be unreasonable to expect employers who are expressly exempted from the FEHA ban on age discrimination to nonetheless realize that they must comply with the law from which they are exempted under pain of possible tort liability." (8 Cal.4th at pp. 135–136, 32 Cal.Rptr.2d 275, 876 P.2d 1074.)

*Jennings* does contain some dicta which Wal*Mart cites as proving its point, to wit, that there must be some statutory basis other than FEHA to support a common-law tort cause of action for wrongful discharge: "The reasoning which supported our holding in *Gantt v. Sentry Insurance, supra,* 1 Cal.4th 1083, 4 Cal.Rptr.2d 874, 824 P.2d 680, makes it clear that the inclusion of age in the policy statement of the FEHA alone is not sufficient to establish a 'fundamental' public policy for the violation of which an employer may be held liable in a common law tort action." (8 Cal.4th at p. 135, 32 Cal.Rptr.2d 275, 876 P.2d 1074.)

However, this language is not helpful to Wal*Mart. First, the *Jennings* court specifically noted that it was not deciding whether employment discrimination on the basis of

age violated a fundamental public policy: "Whether discrimination in employment on the basis of age violates a 'fundamental' public policy has not been resolved by this court. We need not decide that question here since the 'public policy' on which plaintiff relies is not applicable to defendant [because defendant employed four or fewer employees]." (8 Cal.4th at p. 130, 32 Cal.Rptr.2d 275, 876 P.2d 1074.)

Second, the reasoning in *Gantt* which was referred to in the above-quoted language from *Jennings* does *not* support a conclusion that to be fundamental, a public policy must be expressed in multiple statutes, or at least in some statute in addition to FEHA.

Finally, the language from *Jennings* upon which Wal*Mart relies said that "the inclusion of age *in the policy statement* of the FEHA *alone* is not sufficient to establish a 'fundamental' public policy for the violation of which an employer may be held liable in a common law tort action." (8 Cal.4th at p. 135, 32 Cal.Rptr.2d 275, 876 P.2d 1074, emphasis added.)

The policy statement of FEHA is contained in section 12920. In relevant part, such policy statement refers to discrimination on the basis of "physical disability" and "medical condition." It is easy to see why this reference alone would be insufficient to establish a fundamental public policy within the meaning of *Gantt,* because the policy statement does not put an employer on notice of what would constitute a discriminatory practice: physical disability and medical condition are not described, nor is there any description of what employment practices related to these conditions would be considered discriminatory.

However, FEHA *also* contains, in the form of the Family Rights Act, a detailed description of what conditions are protected by FEHA, as well as what employment practices are proscribed. It would be ridiculous to read *Jennings* as requiring the California Legislature to enact some statute in addition to the Family Rights Act in order to inform either employers or the judiciary as to what the Legislature has decided is the public policy of California.

Given this last-stated reason, it is unnecessary to rely on *Brooks v. Bell Savings & Loan Association* (1994) 29 Cal.App.4th 565, 34 Cal.Rptr.2d 785, a case cited by plaintiff. In *Brooks,* the court of appeal held that the plaintiff could state a common-law cause of action for wrongful discharge in violation of the public policy against age discrimination only after the court first concluded that there was a fundamental public policy against age discrimination which predated FEHA.

In my opinion, the court in *Brooks* missed the point when it concentrated on trying to find a public policy which predated FEHA. As stated in *Rojo,* the enactment of FEHA was not intended to supplant employees' existing common-law remedies, one of which was a cause of action for wrongful discharge in violation of public policy. Nothing in *Rojo* or *Gantt* requires that the public policy which has allegedly been violated have been in existence before FEHA; the only requirement is that it be fundamental and well-established, i.e., that it has been contained in a constitutional or statutory provision long enough for an employer to have notice of it.

It would be irrational, as well as an improper meddling of the judiciary in legislative affairs, to create a judicial rule that would limit employees to a tort cause of action for wrongful discharge based only on public policy as it existed before some arbitrarily-selected date, e.g., before the enactment of FEHA. Public policy is not static; it develops in response to changing economic, social and environmental conditions. As the California Supreme Court has acknowledged by finding statutory provisions to be a valid source of public policy, it is the Legislature's prerogative to declare what the public policy is at any given time. The Legislature is presumed to be aware of the common law cause of action for wrongful discharge in violation of public policy, and to intend, unless it declares otherwise, that such common law remedy apply to all violations of public policy irrespective of when the public policy has been enunciated in a statute or constitutional provisions. The common law, too, is not static: "The concept that there are no causes of action except those that have been recognized by precedent, assumed at some

point in the common law, was not accepted generally at early common law, nor is it accepted today." (*Rosefield v. Rosefield*, 221 Cal.App.2d 431, 435, 34 Cal.Rptr. 479 (1963); 5 Witkin, Summary of California Law (9th ed. 1988) Torts, § 16, pp. 75–77.)

For the foregoing reasons, plaintiff has stated a sufficient claim for wrongful discharge in violation of the public policy against employment discrimination on the basis of a medical condition, as such public policy is stated in the Family Rights Act.

### B. *Plaintiff Has Stated a Sufficient Claim for Intentional Infliction of Emotional Distress*

■ "The elements of the tort of intentional infliction of emotional distress are: ' "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct...." ....' [Citation.]" (*Potter v. Firestone Tire and Rubber Company*, 6 Cal.4th 965, 1001, 25 Cal.Rptr.2d 550, 863 P.2d 795 (1993) quoting *Christensen v. Superior Court*, 54 Cal.3d 868, 903, 2 Cal. Rptr.2d 79, 820 P.2d 181 (1991).)

Wal*Mart contends that because plaintiff cannot state a claim for wrongful discharge in violation of public policy, her claim for intentional infliction of emotional distress automatically fails. According to Wal*Mart, the worker's compensation system provides the exclusive remedy for aggrieved employees' claims of intentional infliction of emotional distress because employment discharge is a normal part of the employment relationship. (*Cole v. Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148, 160, 233 Cal.Rptr. 308, 729 P.2d 743.)

■ As explained above, plaintiff's first claim is, in fact, sufficient. Thus, this contention fails; as Wal*Mart itself notes, when an employee is discharged in violation of a fundamental public policy, a claim for intentional infliction of emotional distress caused by such discharge *will* lie. *Gantt*, 1 Cal.4th

at pp. 1100–1101, 4 Cal.Rptr.2d 874, 824 P.2d 680, *supra*; *Rojo*, 52 Cal.3d at p. 81, 276 Cal.Rptr. 130, 801 P.2d 373, *supra*.

Furthermore, even if plaintiff's first claim was insufficient, she has sufficiently stated an independent claim for intentional infliction of emotional distress, because that claim is based not only on the circumstances surrounding her discharge from employment, but also on conduct allegedly committed by Wal*Mart *after* her discharge. Such postdischarge conduct consisted of Wal*Mart's employee Feaster's alleged false statements to Woman's World Shops, by whom plaintiff had been offered a job, that plaintiff was then involved in litigation with Wal*Mart, which statements were allegedly made to disrupt the economic relationship between Woman's World Shops and plaintiff.

Wal*Mart, in its reply, also argues that plaintiff's claim for intentional infliction of emotional distress does not contain specific allegations of outrageous conduct, and notes that plaintiff was not a witness to the conversation between Feaster and Woman's World Shops, so she could only have learned of it through hearsay.

Wal*Mart, however, fails to cite any authority for its implicit contention that plaintiff's seventh claim must be dismissed because it contains an allegation about a conversation to which plaintiff was not a party, or because it does not contain more specific facts about the outrageous nature of Feaster's conduct. The lack of such authority is not surprising, given that claims are filed in court before a plaintiff normally uses the discovery tools often necessary to ferret out more specific facts. Furthermore, plaintiff has specifically stated facts sufficient to support the outrageous conduct element of a claim for intentional infliction of emotional distress, i.e. conduct " 'so extreme as to exceed all bounds of that usually tolerated in a civilized community.' [Citation.]" (*Potter v. Firestone Tire and Rubber Company*, 6 Cal.4th 965, 1001, 25 Cal.Rptr.2d 550, 863 P.2d 795, *supra*, quoting *Christensen v. Superior Court*, 54 Cal.3d 868, 903, 2 Cal. Rptr.2d 79, 820 P.2d 181, *supra*.)

In sum, plaintiff has stated sufficient facts to allege the necessary elements for a claim

of intentional infliction of emotional distress against Wal*Mart.

IV.

*DISPOSITION*

IT IS THEREFORE ORDERED THAT:

Wal*Mart's motion to dismiss plaintiff's first and seventh claims for relief is DE-NIED.