**Samuel CAVIN, Plaintiff,**

v.

**HONDA OF AMERICA MANUFACTURING, INC., Defendant.**

No. C2–00–400.

United States District Court, S.D. Ohio, Eastern Division.

March 28, 2001.

John Spenceley Marshall, Columbus, OH, for plaintiff.

Mary Ellen Fairfield, Vorys Sater Seymour & Pease, Columbus, OH, for defendant.

### MEMORANDUM AND ORDER

HOLSCHUH, District Judge.

This matter is before the Court on Defendant's motion to dismiss Plaintiff's claim for wrongful discharge in violation of public policy. (Record 5). Plaintiff re-

sponded to this motion (Record 6.), and Defendant filed a reply (Record 7). This motion has been fully briefed and is ready for the Court's consideration.

### FACTUAL BACKGROUND[1]

Plaintiff Samuel J. Cavin was employed by Defendant Honda of America Manufacturing, Inc. ("HAM") from May, 1991 to November, 1999. Plaintiff most recently worked as a production associate in HAM's assembly department. In June, 1999, Plaintiff missed several days of work due to a shoulder injury he sustained in a motorcycle accident. Pursuant to HAM's policy, Plaintiff called HAM's security desk each day he was absent from work under his physician's care. When Plaintiff returned to work on July 5, 1999, HAM gave him a leave coordination packet and disciplined him for not submitting the packet prior to his return. After having his physician supply the information requested in the packet, Plaintiff returned the materials to HAM within the time requested by HAM.

Several months later in October, 1999, Plaintiff requested a leave packet for three days of leave, due to the same shoulder injury. Plaintiff completed all of the paperwork he was required to complete, and then gave the packet to his physician to complete the portions requiring medical information. Plaintiff then submitted the packet to HAM within the time allotted by HAM. However, on Friday, October 22, 1999, HAM called Plaintiff at home and informed him that his physician had not filled out all of the paperwork. HAM instructed Plaintiff to pick up the incomplete paperwork, have it completed by his physi-

cian, and return it to HAM. Plaintiff injured himself at work the following day, which was a Saturday. On the next business day, Plaintiff went to HAM's leave coordination department and picked up workers' compensation information and the incomplete leave packet. Plaintiff contends that HAM did not inform him of a deadline for resubmitting the leave packet materials.

Plaintiff took the incomplete leave packet materials to his physician, who was unsure of what information he needed to provide. In order to determine what information the physician should provide, Plaintiff telephoned HAM, and spoke with an employee regarding the forms. This employee informed Plaintiff that he was required to submit the forms to HAM by 11:30 p.m. that night. Plaintiff observed his physician complete the forms and begin to fax them to HAM. That evening, Plaintiff called HAM's leave coordination department to verify that HAM had received the documents faxed to it by his physician. A HAM employee told Plaintiff that the leave department was closed and that he could not check the fax machine. Plaintiff contacted his physician the next day, and his physician confirmed that he faxed the documents to HAM.

During Plaintiff's leave for his workers' compensation injury, HAM contacted him and informed him that it had not received the faxed documents from his physician. HAM discharged Plaintiff on November 9, 1999 for twice violating its leave of absence policy by failing to submit leave documents within the allotted time. Plaintiff contends that he was not made aware of HAM's policy that he only had two days to return

---

1. HAM disputes the facts set forth in this memorandum. However, because HAM has not presented the Court with its version of the facts of this matter, and because this is a Rule 12(b)(6) motion, for purposes of this motion, the Court will construe the facts in favor of Plaintiff. The following facts have been adapted from Plaintiff's memorandum in opposition (Record 6).

the incomplete medical certification until the day the paperwork was due.

### PROCEDURAL BACKGROUND

Plaintiff filed this action on April 3, 2000, asserting three causes of action against HAM. Plaintiff asserts that HAM violated the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, when it discharged him, and when its agents interfered with his rights under the FMLA. Finally, Plaintiff asserts that HAM wrongfully discharged him in violation of Ohio public policy. (Complaint, Record 1). HAM filed an answer to this Complaint on June 2, 2000. (Record 2).

On June 23, 2000, HAM filed a motion pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff's Ohio public policy claim for failure to state a claim upon relief can be granted. (Record 5). In its motion, HAM asserts that the weight of authority holds that Plaintiff may not base his state public policy claim on an alleged violation of the FMLA, and that permitting Plaintiff to do so would allow Plaintiff to "thwart Congress' exclusive remedial scheme by asserting an FMLA claim under the guise of an Ohio 'public policy' claim." (Record 5 at 2). Plaintiff filed a memorandum in opposition to HAM's motion on July 6,2000. (Record 6). HAM filed a reply to Plaintiff s memorandum on July 19, 2000. (Record 7).

### DISCUSSION

### I. STANDARD FOR MOTION TO DISMISS

Defendant HAM moves this Court to dismiss Plaintiff's Ohio public policy claim under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. The purpose of a motion under this rule is to test the sufficiency of the complaint. When consid-ering a motion to dismiss pursuant to Rule 12(b)(6), a court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. *See H.J. Inc. v. Northwestern Bell Telephone*, 492 U.S. 229, 249, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989); *Dunn v. Tennessee*, 697 F.2d 121, 125 (6th Cir.1982). Although the Court must liberally construe the complaint in favor of the party opposing the motion to dismiss, *see Kugler v. Helfant*, 421 U.S. 117, 125–126, n. 5, 95 S.Ct. 1524, 44 L.Ed.2d 15 (1975); *Davis H. Elliot Co. v. Caribbean Utils. Co.*, 513 F.2d 1176, 1182 (6th Cir.1975), it will not accept conclusions of law or unwarranted inferences cast in the form of factual allegations. *See Blackburn v. Fisk Univ.*, 443 F.2d 121, 124 (6th Cir.1971). The Court will, however, indulge all reasonable inferences that might be drawn from the pleading. *See Fitzke v. Shappell*, 468 F.2d 1072, 1076–77 n. 6 (6th Cir.1972).

When determining the sufficiency of a complaint in the face of a motion to dismiss, a court will apply the principle that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See H.J. Inc.*, 492 U.S. at 249, 109 S.Ct. 2893; *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). *See also McLain v. Real Estate Bd.*, 444 U.S. 232, 246, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980); *Decker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 205 F.3d 906, 909 (6th Cir. 2000); *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir.1983). A motion under Rule 12(b)(6) is directed solely to the complaint itself. *See Roth Steel Prods.*, 705 F.2d at 155; *Sims v. Mercy Hospital*, 451 F.2d 171, 173 (6th Cir.1971). Thus, the focus is on whether the plaintiff is entitled to offer evidence to support the

claims, rather than on whether the plaintiff will ultimately prevail. *See McDaniel v. Rhodes,* 512 F.Supp. 117, 120 (S.D.Ohio 1981). The Court will grant a motion for dismissal under Rule 12(b)(6) only if there is an absence of law to support a claim of the type made, or of facts sufficient to make a valid claim, or if on the face of the complaint there is an insurmountable bar to relief indicating that the plaintiff does not have a claim. *See generally Rauch v. Day & Night Mfg.,* 576 F.2d 697, 702 (6th Cir.1978); *Brennan v. Rhodes,* 423 F.2d 706 (6th Cir.1970).

Thus, for purposes of this motion, Plaintiff's compliance with the requirements of the FMLA is irrelevant; instead, the issue is whether, assuming Plaintiff complied with the FMLA, Plaintiff is entitled as a matter of law to assert a wrongful discharge claim under Ohio law based solely on the policy embodied in the FMLA.

## II. WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY

Plaintiff claims he was wrongfully discharged in violation of Ohio public policy, and asserts that he should be able to maintain a wrongful discharge claim based on the FMLA because the FMLA does not provide for punitive damages or compensatory damages based on emotional distress. (Memorandum in Opposition at 7). Defendant asserts that the clear weight of authority indicates that Plaintiff may not base public policy claims upon purported violations of the FMLA and that Congress intended the remedies provided in the FMLA to be exclusive. (Motion to Dismiss at 2). For these reasons, Defendant moves this Court to dismiss Plaintiff's claim that he was wrongfully discharged in violation of Ohio public policy.

Ohio law recognizes the tort of wrongful discharge in violation of public policy. *See Greeley v. Miami Valley Maintenance Contractors, Inc.,* 49 Ohio St.3d 228, 551 N.E.2d 981, Syl. ¶ 2 (1990). Although Ohio law presumes that every employment relationship is at-will, an employment relationship cannot be terminated for a reason which is contrary to law. *See Mers v. Dispatch Printing Co.,* 19 Ohio St.3d 100, 483 N.E.2d 150, Syl. ¶ 1 (1985).

To maintain a cause of action for wrongful discharge in violation of public policy, the plaintiff must establish: (1) a clear public policy manifested in the Ohio or United States Constitutions, a statute or administrative regulation, or the common law (the "clarity element"); (2) that the dismissal of employees under similar circumstances would jeopardize the public policy (the "jeopardy element"); (3) that the discharge was motivated by conduct related to the public policy (the "causation element"), and (4) that the employer lacked a legitimate overriding business justification for the plaintiff's discharge (the "overriding justification element"). *See Collins v. Rizkana,* 73 Ohio St.3d 65, 70 652 N.E.2d 653, 658. The clarity and jeopardy elements are questions of law for the court to determine, whereas the causation and overriding justification elements are questions of fact. *See id.*[2]

---

**2.** This analysis, while analytically helpful, is not always easily applied, due to the entanglement between the first and second elements. If the clarity element is satisfied, the jeopardy element will nearly always be as well, because the jeopardy element is premised upon the existence of a clear public policy. In determining that a plaintiff has established a "clear public policy," a court also impliedly determines that the plaintiff has identified an important societal value which is not otherwise protected, and thus by definition is in jeopardy. The only time the jeopardy element has significance of its own is when, as demonstrated in *Collins v. Rizkana,* 73 Ohio St.3d 65, 652 N.E.2d 653 (1995), a statute exists

In the eleven years since the recognition of the wrongful discharge cause of action, the Ohio courts have greatly expanded the scope of this exception to the employment at will doctrine. The wrongful discharge claim is essentially a common law "gap-filler," in that it is used to supplement the limited remedies which some statutes provide.

The application of the wrongful discharge tort claim is most clearly illustrated in *Kulch v. Structural Fibers, Inc.*, 78 Ohio St.3d 134, 677 N.E.2d 308, *cert. denied*, 522 U.S. 1008, 118 S.Ct. 586, 139 L.Ed.2d 423 (1997). In *Kulch*, an employee alleged that he was discharged for filing a complaint with the Occupational Health and Safety Administration concerning workplace safety. *See Kulch*, 78 Ohio St.3d at 136, 677 N.E.2d at 311. The court held that in addition to asserting a claim under Ohio's whistleblower statute, the employee could also maintain a wrongful discharge claim against his employer based on the policy embodied in the statute, so long as he had complied with the requirements of the statute. *See id.* at Syl. ¶ 3. The court found that the whistleblower statute, which did not authorize recovery of certain compensatory or punitive damages, did not provide relief coextensive to that available via the common law wrongful discharge action. *See Kulch*, 78 Ohio St.3d at 157, 677 N.E.2d at 325. Thus, recognition of the wrongful discharge tort claim was necessary in order to "complement the limited remedies available under the whistleblower statute," and provide the plaintiff with complete relief. *See Kulch*, 78 Ohio St.3d at 155, 677 N.E.2d at 324. The limited nature of the statute's civil remedies established the jeopardy element. *See Livingston v. Hillside Rehabilitation Hosp.*, 79

Ohio St.3d 249, 249–50, 680 N.E.2d 1220, 1221 (1997) (Cook, J., dissenting). The court held that the supplemental wrongful discharge claim was available to the plaintiff because the Court determined that the Ohio General Assembly did not intend for the remedies set forth in the whistleblower statute to be the exclusive remedies for violations of the statute. *See Kulch*, 78 Ohio St.3d at 160, 677 N.E.2d at 327. The court noted that "the intent of the legislature is the determining factor" as to whether the remedies prescribed by a statute are exclusive. *See id.*

Thus, under *Kulch*, the key to maintaining both a statutory claim and a wrongful discharge claim premised solely on the public policy embodied in the same statute, is whether the statutory scheme evidences that the remedies provided therein are to be the exclusive remedies available for violations of the statute's policy.

## III. THE FAMILY AND MEDICAL LEAVE ACT

### A. Statutory provisions

Plaintiff's wrongful discharge claim is based solely on the policy embodied in the FMLA. Thus, it is necessary to examine the FMLA and the remedies provided therein.

Under 29 U.S.C. § 2617, an employee may recover compensatory damages, interest, liquidated damages, attorney's fees and costs, and other equitable relief such as employment, reinstatement and promotion. *See* 29 U.S.C. § 2617(a). First, an employee may recover compensatory damages equal to the amount of any wages, salary, employment benefits, or

---

which either does not provide a remedy, or does provide a remedy which the plaintiff claims is somehow inadequate; in the latter case, the court must determine whether the

public policy at issue would be jeopardized unless the plaintiff can bring a wrongful discharge claim to supplement the statutory remedy.

other compensation denied or lost to the employee by reason of the violation. *See* 29 U.S.C. § 2617(a)(1)(A)(i)(1). If no such compensation has been lost, the employee may recover actual monetary losses sustained as a direct result of the violation, such as the cost of providing care, up to a sum equal to twelve weeks of wages or salary. *See* 29 U.S.C. § 2617(a)(1)(A)(i)(II). Second, an employee may also recover interest on the amount of the compensatory damages awarded. *See* 29 U.S.C. § 2617(a)(1)(A)(ii). Third, in addition to compensatory damages and interest, the employee may also recover liquidated damages equal to the compensatory damages and interest. The court may reduce or eliminate the liquidated damages if the employer proves that the violation was in good faith and that it had reasonable grounds for believing that its behavior was not in violation of the FMLA. *See* 29 U.S.C. § 2617(a)(1)(A)(iii). *See also Thorson v. Gemini, Inc.*, 205 F.3d 370, 383 (8th Cir.) (discussing this exception to the "otherwise mandatory call for liquidated damages"), *cert. denied*, —— U.S. ——, 121 S.Ct. 172, 148 L.Ed.2d 117 (2000); *Nero v. Indus. Molding Corp.*, 167 F.3d 921, 928 (5th Cir.1995) ("a district court may not exercise its discretionary authority to reduce or to eliminate a liquidated damages award unless the employer first sustains its burden of showing that its failure to obey the statute was in good faith").

Fourth, courts must award reasonable attorney's fees, reasonable expert witness fees and other costs to any plaintiff awarded a judgment. *See* 29 U.S.C. § 2617(a)(3). Finally, courts may grant other equitable relief, such as employment, reinstatement and promotion, "as may be appropriate." *See* 29 U.S.C. § 2617(a)(1)(B).

■ Punitive damages and damages for emotional distress are not recoverable under the FMLA. *See Rogers v. AC Humko Corp.*, 56 F.Supp.2d 972, 979 (W.D.Tenn. 1999) (noting and joining the "long line: of federal district courts holding that damages for emotional distress are not recoverable under the FMLA"); *Washington v. Fort James Operating Co.*, 110 F.Supp.2d 1325, 1334 (D.Or.2000) (noting that FMLA does not provide damages for emotional distress); *Keene v. Rinaldi*, 127 F.Supp.2d 770, 772 (M.D.N.C.2000) (concluding that the FMLA does not provide punitive damages, and noting that the availability of liquidated damages suggests that the drafters included that remedy in lieu of allowing punitive damages); *Thorson v. Gemini, Inc.*, 96 F.Supp.2d 882, 890–91 (N.D.Iowa 1999) (liquidated damages are compensatory rather than punitive in nature, and compensate the employee for damages too obscure and difficult to prove), *aff'd*, 205 F.3d 370 (8th Cir.2000).

In addition to these remedial provisions, the FMLA also contains a savings clause, which describes the FMLA's effect on other laws. The savings clause provides:

> Nothing in this Act or any amendment made by this Act shall be construed to supersede any provision of any State or local law that provides greater family or medical leave rights than the rights established under this Act or any amendment made by this Act.

*See* 29 U.S.C. § 2651(b); 29 C.F.R. § 825.701.

## B. FMLA remedies caselaw

In *O'Hara v. Mount Vernon Board of Education*, 16 F.Supp.2d 868 (S.D.Ohio 1998), this Court dismissed a plaintiff's claim brought under 42 U.S.C. § 1983, alleging a violation of rights under the FMLA. The Court pointed out that the

right to bring and maintain a FMLA cause of action is clearly a limited right:

> Section 2617(a)(4) provides that 'the right provided by paragraph (2) to bring an action by or on behalf of any employee shall terminate' on the filing of a complaint by the Secretary of Labor under subsections (d) or (b) unless the action is dismissed without prejudice on motion of the Secretary. Thus, an employee's cause of action brought under the FMLA is 'trumped' by the Secretary's filing of a complaint.

*See id.* at 894. The Court reasoned that it would be anomalous to hold that when the only unlawful employment practice consists of a violation of the FMLA, a plaintiff could bypass the restrictions on the plaintiff's right to bring and maintain an action under the FMLA by simply framing the cause of action as one brought under § 1983. *See id.*

When the restricted right to bring a FMLA action is coupled with the detailed specific remedies Congress made available for a violation of the FMLA, this Court reached the conclusion that "the comprehensive detailed enforcement provisions of the FMLA show an intention of Congress that the specific remedies set forth in § 2617 be the exclusive remedies available for a violation of the FMLA." *See id.* at 894.

With respect to the savings clause in the FMLA, this Court said:

> The Court is aware that 29 U.S.C. § 2651(a) provides that, "nothing in this Act shall be construed to modify or affect any Federal or State law prohibiting discrimination on the basis of race, religion, color, national origin, sex, age, or disability." It is clear from the Senate Report that the purpose of this provision was to ensure that the FMLA did not affect or amend Title VII or the Rehabilitation Act of 1973 or the Americans with Disabilities Act of 1990 or similar laws that provide "already existing rights and protection." Senate Report, p. 338. Section 1983 itself, of course, created no substantive rights, and while Congress did not intend to modify or affect other laws dealing with discriminatory practices, it does not follow that it intended that violations of the FMLA itself could be remedied in some in manner other than by compliance with the enforcement provisions of § 2617.

> This Court concludes that the enforcement scheme of the FMLA, like that of the FLSA, and Title VII provides the exclusive remedy for a violation of the Act, and that plaintiff's cause of action under 42 U.S.C. § 1983 must be dismissed.

It should be clear from what this Court said in *O'Hara* that the savings clause does not prevent a plaintiff from filing a claim under another federal statute or a state statute that prohibits discrimination, when that statute provides its own enforcement scheme and remedies that do not have the effect of bypassing or conflicting with the enforcement scheme of the FMLA. A claim under 42 U.S.C. § 1983 which is founded solely on a violation of the FMLA has the effect of bypassing and conflicting with the enforcement scheme of the FMLA, a result clearly not intended by Congress. Likewise, a claim based on public policy which is founded solely on a violation of the FMLA has the same effect. It equally is not a result intended by Congress and is not saved by the savings clause. In short, there is a vast difference between a case in which a claim based a violation of the FMLA is joined with a claim based on another federal or state statute that has its own provisions for enforcement and remedies, and a case in which a claim based on a violation of the

FMLA is joined with a claim that is also based on the rights granted by the FMLA but which circumvents and conflicts with the enforcement provisions and remedies set forth in the FMLA. The savings clause permits the former; it does not save the latter.

Other courts have also held that the remedies set forth in the FMLA are intended to be the exclusive remedies for violations of its provisions. For example, in *Desrochers v. Hilton Hotels Corporation*, 28 F.Supp.2d 693, 694 (D.Mass.1998), the court addressed the issue of whether an employee could assert a cause of action under Massachusetts' civil rights act (MCRA) for a violation of rights contained in the FMLA. Given the similarity between § 1983 claims and MCRA claims, the court decided that reliance on cases such as *O'Hara*, which involved a § 1983 claim, was justified. *See id.* at 695. The court dismissed the employee's claim, finding that because Congress intended the FMLA's specific remedies to be exclusive, the employee could not bypass the remedial scheme by asserting a MCRA claim to enforce rights granted by the FMLA. *See id.* at 695. The *Desrochers* court also addressed the FMLA's savings clause and concluded that the clause "merely allows states to provide additional substantive leave rights, it does not suggest Congress intended that states should provide additional remedies for FMLA violations." *See id.*

In *Kilvitis v. County of Luzerne*, 52 F.Supp.2d 403, 419 (M.D.Pa.1999), the court found that the "FMLA provides a comprehensive remedial measures [sic] that evinces Congress' intent to foreclose the use of a § 1983 claim."[3] Likewise, in *Kiely v. University of Pittsburgh Medical Center*, No. 98–1536, 2000 WL 262580 at \*17 (W.D.Pa. Jan. 20, 2000), the court dismissed the plaintiff's negligence claim and held that the FMLA provides a comprehensive remedial scheme which evinces Congress' intent to preempt state law tort claims premised upon a FMLA violation.

Although the claims at issue in *O'Hara, Desrochers, Kilvitis* and *Kiely* were not wrongful discharge claims, these holdings are instructive as to judicial construction of the FMLA and its remedies.

## IV. WRONGFUL DISCHARGE CLAIMS UNDER THE FMLA

The issue before the Court is whether Plaintiff may assert a wrongful discharge claim based upon the public policy embodied in the FMLA. Although no Ohio state court has addressed the exact issue before the Court, several federal courts in Ohio and in other jurisdictions have done so. The overwhelming majority of those courts have held that plaintiffs may not assert a wrongful discharge tort claim based on the policy embodied in the FMLA.

### A. Caselaw barring wrongful discharge claims

Courts in the Northern District of Ohio have addressed this exact issue three times. In *Gall v. Quaker City Castings, Inc.*, 874 F.Supp. 161, 164 (N.D.Ohio 1995), the Court held that the plaintiff could not assert a wrongful discharge claim based on the FMLA, because Congress has spoken on the issue of family medical leave in the workplace "by enacting comprehensive statutes as legislative statements of public policy in this area." In *Vargo–Adams v. United States Postal Service*, 992 F.Supp. 939, 944 (N.D.Ohio 1998) and *Dorricott v.*

---

**3.** It should be noted that in *Kilvitis,* the plaintiff conceded the adequacy of the relief provided by the FMLA and thus did not contest the defendants' argument that the plaintiff's § 1983 claim should be dismissed. *See Kilvitis,* 52 F.Supp.2d at 419 n. 15.

*Fairhill Center for Aging,* 2 F.Supp.2d 982, 993 (N.D.Ohio 1998), *aff'd,* 187 F.3d 635 (table), No. 98–3671, 1999 WL 591453 *4 (6th Cir.1999) (table), the court followed *Gall,* and held that the plaintiffs could not maintain wrongful discharge claims.[4]

Other district courts have reached the same conclusion when addressing similar tort claims brought under other states' law. *See Hamros v. Bethany Homes and Methodist Hosp.,* 894 F.Supp. 1176, 1179 (N.D.Ill.1995) (dismissing Illinois retaliatory discharge claim because FMLA provides adequate remedy for retaliation); *McKiernan v. Smith–Edwards–Dunlap Co.,* No. 95–1175, 1995 WL 311393 at *5 (E.D.Pa. May 17, 1995) (Pennsylvania wrongful discharge claim barred because FMLA provides the proper remedy for any violations of the statute); *McClain v. Southwest Steel Co., Inc.,* 940 F.Supp. 295, 298 (N.D.Okla.1996) (Oklahoma wrongful discharge claim barred by FMLA's exclusive statutory remedies); *Parker v. Chestnut Hill Hosp.,* No. 96–1292, 1996 WL 334426 at *2 (E.D.Pa. June 6, 1996) (Pennsylvania wrongful discharge claim preempted by FMLA's statutory remedy); *Callozzo v. Office Depot, Inc.,* No. 97–5308, 1998 WL 111628 at *5 (N.D.Ill. Mar.6, 1998) (recognition of Illinois retaliatory discharge claim not necessary because FMLA contains its own strong deterrents to violations); *Gearhart v. Sears, Roebuck & Co., Inc.,* 27 F.Supp.2d 1263, 1278 (D.Kan.1998) (common law retaliatory discharge claim barred because Plaintiff has adequate federal statutory remedy under the FMLA) *aff'd,* 194 F.3d 1320 (table), No. 98–3325, 1999 WL 781056 (10th Cir. Oct.1, 1999); *Phelan v. Town of Derry,* No. 98–13, 1998 WL 1285898 at *2 (D.N.H.

Dec.9, 1998) (New Hampshire retaliatory discharge claim precluded by remedy afforded by the FMLA); *Weeden v. Sears, Roebuck & Co.,* No. 98–435, 1999 WL 1209494 at *3 (D.N.H. May 25, 1999) (same); *Cooper v. Harbour Inns of Baltimore, Inc.,* No. 98–2173, 2000 WL 351373 at *8 (D.Md. Mar.20, 2000) (FMLA cannot serve as a source of public policy for Maryland wrongful discharge claim because FMLA clearly provides a civil remedy for any violations). *See also Price v. Multnomah County,* No. 99–1593, 2001 WL 218502 at *5 (D.Or. Jan.31, 2001) (noting, without deciding, that FMLA statutory remedies probably preempt the plaintiff's common law wrongful discharge claim).

## B. Caselaw permitting wrongful discharge claims

Although the majority of courts have held that state wrongful discharge claims may not be predicated upon the policy embodied in the FMLA, several courts have held that such claims may be brought. Most notably, in *Arthur v. Armco, Inc.,* 122 F.Supp.2d 876, 880 (S.D.Ohio 2000), Judge Sargus held that in addition to a separate statutory FMLA claim, the plaintiff could assert a wrongful discharge claim based upon the public policy reflected in the FMLA, because the remedies provided by the FMLA are "limited to recovery of lost employment wages and benefits, and in certain instances, liquidated damages." According to *Arthur,* the FMLA does not provide plaintiffs with complete relief. *See id.* While acknowledging the contrary *Dorricott* and *Vargo–Adams* decisions from the Northern District of Ohio, the *Arthur* court did not

---

**4.** The Sixth Circuit affirmed the district court's decision, but held that the plaintiff could not maintain a wrongful discharge claim under the FMLA because the FMLA "demonstrates a clear policy of protecting longer-term employees," not employees, like the plaintiff, who had worked less than six months for her employer. *See Dorricott v. Fairhill Center For Aging,* 187 F.3d 635 (table), 1999 WL 591453 at *4.

follow those decisions because they "disregarded the Ohio Supreme Court's pronouncements in *Kulch* and *Livingston.*" See *id.*[5]

In a recent decision from the Northern District of Ohio, *Maxwell v. GTE Wireless Service Corporation,* 121 F.Supp.2d 649, 660 (N.D.Ohio 2000), the court found that the plaintiff, who alleged that he was dismissed because of his exercise of a FMLA right, could assert a wrongful discharge claim based upon the FMLA's public policy, because the statute's public policy would be jeopardized otherwise. However, the court failed to explain why the FMLA's remedies were inadequate to protect that policy from jeopardy, nor did the court consider the exclusivity of the FMLA's remedies. See *id.*

In *Mora v. Chem–Tronics, Inc.,* 16 F.Supp.2d 1192, 1231–32 (S.D.Cal.1998), the court held that the employee could assert a wrongful discharge claim under California law based on the public policy of the California Family Rights Act (CFRA) and the FMLA. In reaching its decision, the court relied on *Ely v. Wal–Mart, Inc.,* 875 F.Supp. 1422 (C.D.Cal.1995). The problem with the court's reliance on *Ely,* however, is that the *Ely* court did not decide this issue. In fact, the claims asserted in *Ely* were not based on the

FMLA at all. Instead, in *Ely,* the plaintiff's wrongful discharge claim was based on the Family Rights Act (FRA), the predecessor of the CFRA. See *Mora,* 16 F.Supp.2d at 1231 n. 11. Although the *Ely* court noted that the provisions in the FRA related to medical leave were similar to those found in the FMLA, it did not discuss the issue of exclusivity with respect to the FMLA's remedies. See *Ely,* 875 F.Supp. at 1426 n. 6. Rather, the *Ely* court concluded that California's Fair Employment and Housing Act (FEHA), of which the FRA was a part, "does not displace any causes of action and remedies that are otherwise available to plaintiffs." See *Ely,* 875 F.Supp. at 1427. Thus, the *Mora* court's reliance upon *Ely* for its determination that a plaintiff can assert a wrongful discharge claim based upon the FMLA is clearly misplaced, because *Ely* did not address this question with respect to the FMLA. Given that the *Mora* court did not engage in any analysis independent of that purportedly performed by the *Ely* court, *Mora* carries little, authoritative weight.

In *Danfelt v. Board of County Commissioners of Washington County,* 998 F.Supp. 606, 611 (D.Md.1998), the court permitted the employee to assert a wrongful discharge claim based upon the FMLA, finding that the FMLA's savings clause does not evince an intent to completely

---

5.  See *Livingston v. Hillside Rehab. Hosp.,* 79 Ohio St.3d 249, 680 N.E.2d 1220 (1997). In *Livingston,* the plaintiff brought an age discrimination claim under an Ohio statute and a common law wrongful discharge claim based on that same statute. The appellate court determined that the statute provided remedies as broad as those available for the wrongful discharge claim, and thus the wrongful discharge claim was unavailable to the plaintiff. In other words, because the plaintiff could obtain complete relief with the statutory claim, the wrongful discharge claim was not necessary. The Ohio Supreme Court issued a one sentence "reversal 'on the authority of' entry" in which it reversed the

appellate court's decision and remanded the case on the authority of *Kulch.* See *id.* The court provided no further explanation of its action.

In a dissenting opinion, Justice Cook noted that the only "inadequacy" of the statute was that it did not provide for a jury trial, whereas the plaintiff would be entitled to a jury trial on the wrongful discharge claim. See 79 Ohio St.3d at 250, 680 N.E.2d at 1221. She noted, however, that *Kulch,* addressed the remedies provided by Ohio's whistleblower statute, and thus did not govern the question of whether the General Assembly intended the age discrimination statute's remedies to be exclusive. See *id.*

preempt state law causes of action, and that Maryland's law of wrongful discharge does not conflict with the FMLA.

In *Wilson v. Tarr, Inc.,* No. 99–1412, 2000 WL 1292590 at *6 (D.Or. Sept.8, 2000), the court concluded that the plaintiff could assert a wrongful discharge claim based on the FMLA. The court refused to rely on cases cited by the defendant which addressed § 1983 (or similar state statutes) claims, and determined that under Oregon law, the availability of a statutory remedy does not preclude a common law wrongful discharge claim. *See id. See also Washington v. Fort James Operating Co.,* 110 F.Supp.2d 1325, 1334 (D.Or.2000) (denying employer's motion for summary judgment because of issue of whether plaintiff's remedies under FMLA are inadequate because wrongfully discharged employees cannot seek damages for emotional distress under FMLA).

**V. PLAINTIFF'S CLAIM**

Plaintiff argues that like Ohio's whistleblower statute at issue in *Kulch,* the FMLA does not permit recovery of punitive damages or compensatory damages for emotional distress. Although this is true, it is also irrelevant, because the issue before the Court is not what remedies the FMLA fails to provide, but whether the remedies it does provide are intended to be the exclusive remedies. Plaintiff fails to recognize that *Kulch* stands for the proposition that a plaintiff may assert a wrongful discharge tort claim based upon the policy of a statute where the remedies provided by that statute will not afford the plaintiff complete relief, *and* the remedies are not intended to be the exclusive remedies for violations of the statute's policy. The issue is not simply whether the statute has the same remedial deficiencies as the Ohio whistleblower statute, because the intent of the legislature must be taken into account. *See Livingston,* 79 Ohio St.3d at 250, 680 N.E.2d at 1221 (Cook, J., dissent-

ing) (noting that *Kulch* does not govern the question of whether the General Assembly intended Ohio's age discrimination statute's remedies to be exclusive).

In *Kulch,* the Ohio Supreme Court determined that the Ohio General Assembly did not intend for the remedies set forth in the whistleblower statute to be exclusive. In contrast, this Court has previously held that Congress intended the enforcement scheme and remedies provided by the FMLA to be exclusive. *See O'Hara,* 16 F.Supp.2d at 894–95. Several other federal courts have reached the same conclusion. *See Desrochers,* 28 F.Supp.2d at 694; *Kilvitis,* 52 F.Supp.2d at 419; *Kiely,* 2000 WL 262580 at *17. Although *O'Hara* concerned a § 1983 claim, the Court finds no material distinction between a § 1983 claim and a wrongful discharge tort claim for purposes of asserting a claim based on the FMLA. In fact, similar to a § 1983 claim that is based on rights provided by the FMLA, Plaintiff's wrongful discharge claim is also based on rights provided by the FMLA. The problem, however, is that such claims, having no independent statutory basis, run afoul of the enforcement scheme and benefits provided in the FMLA. Because of that conflict, such claims are not enforceable.

In addition to the caselaw addressing only the FMLA, the majority of courts to address this exact issue, the assertion of a wrongful discharge claim based upon the policy embodied in the FMLA, have concluded that such claims cannot be maintained. *See e.g., Hamros,* 894 F.Supp. at 1179; *McClain,* 940 F.Supp. at 298; *Gearhart,* 27 F.Supp.2d at 1278. Plaintiff argues that the Court should not rely on these federal cases addressing wrongful discharge claims brought under the common law of other states, because the parameters of the wrongful discharge tort vary from state to state. *See* Memorandum in Opposition at 7–8 n. 2. Although

variances exist among the states regarding these types of tort claims, those differences do not diminish the importance of these cases for their discussion of the FMLA and its remedies in relation to state tort claims.

In addition to these holdings, however, the Court may also rely on the opinions of federal courts in Ohio who have addressed this exact issue. The Court acknowledges that *Gall* was decided prior to *Kulch*, and that the most recent decision addressing this issue, *Arthur*, held that the plaintiff could assert a wrongful discharge claim based on the FMLA. However, the Court respectfully disagrees with the *Arthur* decision. Unlike the *Arthur* court, this Court does not find that *Vargo–Adams* and *Dorricott* ignored *Kulch*. *See Arthur*, 122 F.Supp.2d at 880. To the contrary, those decisions followed the Ohio Supreme Court's lead in discerning the intent of the legislature in order to determine whether a statute's remedies are exclusive. In *Vargo–Adams* and *Dorricott*, the court found that Congress intended the FMLA's remedies to be exclusive, a conclusion which is supported by the manner in which Congress clearly and carefully set forth the FMLA's remedies in § 2617. Although *Vargo–Adams* and *Dorricott* may have disregarded the Ohio Supreme Court's "pronouncements" in *Kulch* and *Livingston* in the sense that they limit the expansion of the wrongful discharge claim, this limiting effect does not mean that *Vargo–Adams* and *Dorricott* were wrongly decided.

▪ This Court joins the majority of courts which have addressed this issue, and holds that a plaintiff may not assert a state law claim for wrongful discharge in violation of public policy based solely on the rights set forth in the FMLA. The FMLA sets forth a specific enforcement scheme and specific remedies which Congress clearly intended to be applied for violations of the FMLA. Although these remedies may not provide Plaintiff with complete relief, because he may not recover punitive damages or compensatory damages for emotional distress, the policy embodied in the FMLA is not jeopardized, because Congress has set forth remedies for violations of it. Furthermore, and of greater importance, Plaintiff may not circumvent the enforcement scheme and the remedial structure which Congress has so specifically set forth in the FMLA.

The Court hereby **GRANTS** Defendant's motion to dismiss Plaintiff's wrongful discharge claim, (Third Cause of Action) because even when viewed in the light most favorable to Plaintiff, his claim fails to state a claim upon which relief can be granted.

### CONCLUSION

The Court **GRANTS** Defendant's motion to dismiss Plaintiff's third cause of action. (Record 5). Plaintiff's claim for wrongful discharge under Ohio public policy is hereby **DISMISSED**.

**IT IS SO ORDERED.**